Lilla Ann NORTON and Constance Cummings, Individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

TALLAHASSEE MEMORIAL HOSPITAL, an Autonomous Agency of the City of Tallahassee, Defendant-Appellee.

No. 81–5470.

United States Court of Appeals, Eleventh Circuit.

Oct. 4, 1982.

Rehearing and Rehearing En Banc Denied Feb. 25, 1983.

Kent Spriggs, Spriggs & Henderson, Tallahassee, Fla., Ann Cocheu, Patterson & Traynham, Jerry G. Traynham, Brian Norton, Tallahassee, Fla., for plaintiffs-appellants.

William F. Kaspers, Atlanta, Ga., Henry, Buchanan, Mick & English, John D. Buchanan, Jr., Tallahassee, Fla., for defendant-appellee.

Before MILLER *, TJOFLAT and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Lilla Ann Norton [1] appeals from a district court order disqualifying her attorney, Kent Spriggs, from further representation of the plaintiffs in this civil rights action. The district court based its disqualification order on Canon 9 of the Code of Professional Responsibility, which cautions attorneys to

---

* Honorable Jack R. Miller, Judge for the U. S. Court of Customs and Patent Appeals, sitting by designation.

1. Norton is a named plaintiff and class representative in this class action suit filed in 1976.

Constance Cummings joined Norton's action in January 1981 as an additional plaintiff and class representative. Both Norton and Cummings are appellants, but for clarity we refer to the appellants collectively as "Norton."

"avoid even the appearance of professional impropriety." Because we find that the appearance of impropriety or conflict of interest involved in this case, if any, is remote and speculative, we reverse.

This case commenced in September 1976 when appellant Norton filed a complaint under Title VII of the Civil Rights Act of 1964 [2] in the district court against the appellee, Tallahassee Memorial Hospital ("the Hospital"). Norton brought suit on behalf of herself and a large class of black employees of the Hospital, alleging racial discrimination by the Hospital in hiring, promotions, and disciplinary actions, *inter alia.* From the commencement of this action until his disqualification, Kent Spriggs represented Norton and the purported class as lead counsel.

Extensive discovery was completed in this case on May 19, 1980, by order of the district court. On January 8, 1981, the district court scheduled a hearing for March 2, 1981, on plaintiffs' joint motion for class certification. Six days before the scheduled hearing, however, attorney Spriggs was elected to the City Commission of the City of Tallahassee, Florida ("City Commission"). This development prompted the district court to conduct a hearing on February 26, 1981, to explore potential ethical problems created by Spriggs' dual status as City Commissioner and counsel for the plaintiffs. The district court's concern was based on the following facts as found by the district court in its disqualification order: (1) all the racially discriminatory acts alleged by Norton occurred prior to June 30, 1979, while the Hospital was an autonomous agency of the City of Tallahassee under the direct control of the City Commission; (2) on June 30, 1979, the City of Tallahassee leased the Hospital to the Tallahassee Memorial Regional Medical Center, Inc. (TMRMC), a statutorily created nonprofit Florida corporation, such lease providing, *inter alia,* that City Commissioners shall have the right to enter and inspect the

Hospital premises and to examine the financial books and accounts of TMRMC, and in the event of a default by TMRMC, control of the Hospital shall revert to the City; and (3) the Hospital is represented in this litigation by attorneys whose firm has represented the City of Tallahassee since 1972, the firm's senior partner is the City Attorney, and the usual attorney-client relationship exists between the City Commission and this law firm. As part of TMRMC taking over the Hospital, it assumed and agreed to pay all of the liabilities, known and unknown, of the then existing Hospital.

In sum, the responsible defendant who will be subjected financially to a liability if any ensues in this litigation is Tallahassee Memorial Regional Medical Center, Inc. The position of the City Commission insofar as this nonprofit Hospital corporation is concerned is that the City is the lessor owner of the premises and as owner has a right to inspect the premises and financial books and accounts of the lessee, not an unusual lease provision. The Commission will have no role in controlling the Hospital or participating or directing its activities or the handling of its matters, including lawsuits, until and unless the Hospital corporation defaults.

Based on the foregoing facts, the district court disqualified Spriggs from further representation of the plaintiffs, relying upon Canon 9 of the Florida Code of Professional Responsibility,[3] which provides that attorneys should "avoid even the appearance of professional impropriety." The district court interpreted Canon 9 to apply not only "retroactively" but also "prospectively," and stated the test for "prospective" application to be whether there is "a showing of a reasonable possibility that some specifically identifiable impropriety could occur in the future." The district court then determined that disqualification under Canon 9 was warranted for the following reasons: (1) if Spriggs is permitted to represent employees of an entity that has been and may

---

**2.** 42 U.S.C. §§ 2000e *et seq.*

**3.** Rule 5(F) of the United States District Court for the Northern District of Florida adopts the Florida Code of Professional Responsibility.

again be directly regulated by the City Commission on which he sits, suspicion will exist that either the employees are not getting proper legal representation or the citizens of Tallahassee are not getting adequate legislative representation; (2) suspicions of impropriety will arise from Spriggs' suing a party that he conceivably can control and whose records are accessible to him; (3) appearances of impropriety are inherent in the situation where attorney Spriggs is opposed by an attorney on Commissioner Spriggs' payroll; and (4) the likelihood of public suspicion outweighs the social interests that would be served by Spriggs' continued participation in this case. Norton now brings this interlocutory appeal from the disqualification order, claiming that the district court misinterpreted and misapplied the test for disqualification under Canon 9.

A district court order disqualifying counsel is a "final order" appealable under 28 U.S.C. § 1291. *United States v. Hobson,* 672 F.2d 825, 826 (11th Cir. 1982). When reviewing a challenged disqualification order, this court employs the same standard of review as that used in reviewing most other final orders of a district court: we apply the "clearly erroneous" test to findings of fact while carefully examining the district court's interpretation and application of relevant ethical standards. *Id.* at 828; *Woods v. Covington County Bank,* 537 F.2d 804, 810 (5th Cir. 1976).

Turning to the district court's findings of fact, we conclude that one such finding is clearly erroneous. The district court found that "there is a reasonable possibility of the City Commission of the City of Tallahassee having direct control over the entity which [Spriggs] now is suing." This finding has no support in the record. The City Commission would gain direct control over the Hospital only if TMRMC de-

faulted under the lease, and we find the possibility of such an occurrence to be remote at best. Therefore, we reject the district court's finding on this point. In all other respects, the district court's findings of fact are not clearly erroneous. We now must examine the lower court's interpretation and application of the relevant ethical standard, Canon 9 of the Code of Professional Responsibility.

Canon 9 provides: "A lawyer should avoid even the appearance of professional impropriety." The purpose of Canon 9 is to preserve public confidence in the bar and in the legal process. In *United States v. Hobson,* 672 F.2d 825 (11th Cir. 1982), this court articulated the following two-prong test for disqualification of an attorney under Canon 9. First, although proof of actual wrongdoing is not required, there must exist a reasonable possibility that some specifically identifiable impropriety did in fact occur. Second, the likelihood of public suspicion or obloquy must outweigh the social interests that will be served by the attorney's continued participation in the case. *United States v. Hobson,* 672 F.2d at 828. An attorney should be disqualified under Canon 9 only if both prongs of this test are satisfied. *Id.*

The district court interpreted Canon 9 to apply "prospectively," and thus concluded that the first prong of the test is satisfied if there exists "a reasonable possibility that some specifically identifiable impropriety could occur in the future." In this respect, the district court erred. The first prong of the test clearly requires a showing of a reasonable possibility that some specifically identifiable impropriety *did in fact occur. United States v. Hobson,* 672 F.2d at 828. Thus, to the extent that the district court's disqualification of Spriggs was based on its erroneous interpretation of the required test, the disqualification was improper.[4]

---

4. This is not to say that we approve of situations where an attorney's involvement in a case presents "a reasonable possibility that some specifically identifiable impropriety could occur in the future." In cases of that nature, however, we believe that the ethical violation, if any, is better dealt with through the disciplinary machinery of the state bar. Disqualification is a harsh sanction, often working substantial hardship on the client, especially in cases

■ We turn now to an examination of the factual basis for Spriggs' disqualification to determine whether the first prong of the test has been satisfied, *i.e.,* whether the facts demonstrate a reasonable possibility that some specifically identifiable impropriety did in fact occur. Spriggs' membership on the City Commission presented three problems in the district court's view: (1) that the Commission regulated the Hospital during the time when the alleged discrimination occurred and conceivably could regulate the Hospital in the future; (2) that the Commission, and thus Spriggs, has access to the Hospital's financial records; and (3) that the Commission has the same attorney as the Hospital, thus meaning that "lawyer Spriggs is opposed by an attorney on Commissioner Spriggs' payroll."

Each of these problems involve *potential* improprieties, but nothing in the district court's order suggests the existence of a reasonable possibility that some impropriety already has occurred. Moreover, as for problem (1), Spriggs testified during the disqualification hearing that if TMRMC defaulted and control of the Hospital reverted to the Commission, he would withdraw from the case if at that time he continued to occupy the post of City Commissioner. As for problem (2), there is no evidence that the Hospital's financial records would be of value to the plaintiffs in this case, *see Cossette v. Country Style Donuts, Inc.,* 647 F.2d 526, 530 (5th Cir. 1981), and even if such evidence existed, no showing has been made that Spriggs alone, as opposed to the Commission as a group, has authority to inspect these records. Furthermore, even if Spriggs has such authority, no showing has been made that he has exercised it. Finally, as for problem (3), if this situation created a conflict, an attorney member of a city commission or of a corporate board of directors would be disqualified from participating in any case where attorneys for the city or the corporation were also attorneys for the opposing side. It may be that the

Bar has such a stringent standard, and, if so, attorney Spriggs is subject to discipline. However, we do not consider ourselves to be the forum for the discipline of Florida attorneys. The Florida Bar has an effective procedure and machinery with a fully paid staff and active participation of Bar members to effectuate its high objective standards for its members. We construe the primary function of the courts in this area to be to ensure that a party's legal representation is not impaired by ethical misconduct of that party's attorney and that the public not lose confidence in the judicial system. We note in passing that if the attorney-client relationship between the Commission and the Hospital's counsel involves any impropriety, it would seem to involve defense counsel rather than Spriggs. Commissioner Spriggs is the client in that relationship, thus placing defense counsel in a situation of potentially conflicting loyalties.

We conclude that the evidence in this case fails to satisfy the first prong of the test articulated in *Hobson.* Thus, we need not undertake the balancing analysis required under the second prong. We hold that the district court erroneously applied the Canon 9 disqualification test "prospectively," and that there is no showing of a reasonable possibility that some specifically identifiable impropriety has in fact occurred. Therefore, the district court's order disqualifying Spriggs from continued participation in this case is

REVERSED.

■

---

such as this one where extensive discovery and trial preparation have been completed. As such, disqualification should be resorted to sparingly and, when based on an appearance of

impropriety under Canon 9, should be ordered only where there exists a reasonable possibility that the impropriety already has occurred.