**HARTE BILTMORE LIMITED, Embassy Park Limited, and Stanley J. Harte, Plaintiffs,**

v.

**FIRST PENNSYLVANIA BANK, N.A., Defendant.**

No. 84–8390–CIV.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

March 11, 1987.

Jerome J. Froelich, Jr., McKenney & Froelich, Atlanta, Ga., Jerold I. Budney, Thomson, Zeder, Bohrer, Werth, Adorno & Razook, Miami, Fla., for plaintiffs.

Karen M. Scheller, Edward F. Mannino, Ann M. Caldwell, Baskin Flaherty Elliott & Mannino, P.C., Philadelphia, Pa., for defendant.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the motion of plaintiffs Stanley J. Harte, Harte Biltmore Limited and Embassy Park Limited to disqualify the law firm of Baskin Flaherty Elliot & Mannino, P.C., from serving as counsel for the defendant, First Pennsylvania Bank, N.A. ("the Bank"). The parties have fully briefed the issues raised by this motion and have stipulated to all relevant facts. The court held an evidentiary hearing on the motion to disqualify on September 12, 1986.

This motion involves a conflict that developed as a result of a merger between two law firms. The Philadelphia-based law firm of Dilworth, Paxson, Kalish & Kaufman ("the Dilworth firm") originally represented the Bank in this action. Plaintiffs' complaint alleges that the Bank overcharged them interest on loans which were made in connection with the remodeling and condominium conversion of the Palm Beach Biltmore Hotel.

The Dilworth attorneys with primary responsibility for this litigation were Edward Mannino, Karen Scheller and Anne Caldwell. On April 1, 1986, 17 attorneys left the Dilworth firm and joined with several attorneys from the Pittsburgh-based law firm of Baskin & Steingut. After the merger, Baskin & Steingut was reconstituted as Baskin Flaherty Elliot & Mannino,

P.C. ("BFE & M"). Mr. Mannino, Ms. Scheller and Ms. Caldwell were among the Dilworth attorneys who joined BFE & M. On April 9, 1986, BFE & M entered its appearance in this case on behalf of the Bank. The Dilworth firm filed a Notice of Withdrawal of Appearance.

The purported conflict arises from the representation of Stanley J. Harte in a state court action by Melvin Schwartz. Mr. Schwartz was an attorney with Baskin & Steingut who undertook representation of Harte in a malicious prosecution action in Palm Beach County brought by Harte against the Palm Beach Biltmore Condominium Association, Inc. Melvin Schwartz was a partner at Baskin & Steingut's Boca Raton office until April 1, 1986 when he joined BFE & M.

The dual representation by BFE & M surfaced on or about April 10, 1986 when Leon Katz, an associate of Mr. Harte, learned that Mr. Mannino had joined BFE & M. Apparently, the conflict had not been detected prior to the merger because Mr. Harte's name had been misspelled on one of the firms' list of clients. The computer-generated list reflects Stanley Harte's name as "Harte, Stanely."

On April 18, 1986, Mr. Harte informed BFE & M that he could not consent to its representation of him in the state court action and against him in this case. On April 16, 1986, BFE & M moved to withdraw as counsel in the state court action. That motion was granted over Harte's objections.

Plaintiffs moved to disqualify BFE & M from representing the Bank in this action on May 23, 1986. Plaintiffs argue that BFE & M must be disqualified because it breached the duty of undivided loyalty owed to plaintiffs when it abandoned Stanley Harte to represent another client against him. The court agrees that BFE & M must be disqualified.

■ The Bank contends that disqualification is not warranted because the state court action and this action are not "substantially related." However, the "substantial relationship test" is only applicable

in determining whether an attorney may properly accept employment against a *former* client. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976). In this case, as a result of the merger, members of the same law firm simultaneously represented and opposed Mr. Harte in two different matters. "The propriety of this conduct must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." *Id.*

Disciplinary Rule 5–105(B) of the Florida Code of Professional Responsibility prohibits a lawyer from continuing "multiple employment if the exercise of his independent professional judgment in behalf of a client will or is likely to be adversely affected by his representation of another client...." Courts have presumed that an adverse effect results when an attorney takes a position adverse to a present client. *See Unified Sewerage Agency, etc. v. Jelco, Inc.*, 646 F.2d 1339, 1345 (9th Cir.1981); *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir.1981).

▪ The possible effects on the quality of an attorney's services on behalf of a client being sued by the attorney include diminution in the vigor of the representation of the client in the other matter and a deleterious effect on the attorney-client relationship. *International Business Machines Corp. v. Levin*, 579 F.2d 271, 280 (3d Cir.1978). Disqualification must be ordered when an attorney's multiple representation gives the appearance of representing multiple interests. *Cinema 5, Ltd.*, 528 F.2d at 1387.

The duty of undivided loyalty applies in this case despite the fact that BFE & M withdrew its representation of Harte prior to the filing of this motion to disqualify. *See Jelco, Inc.*, 646 F.2d at 1345 n. 4. The *Jelco* court noted that "[i]f this were not the case, the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client." *Id.*

▪ By withdrawing from its representation of Stanley Harte, BFE & M breached the duty of loyalty owed to Harte. "A lawyer's duty to his client is that of a fiduciary or trustee." *Cinema 5, Ltd.*, 528 F.2d at 1386. A client who retains an attorney to represent him expects the attorney's "undivided loyalty" as his "advocate and champion." *Id.* The client also has a right to expect that his attorney would "accept no retainer to do anything that might be adverse to his client's interests." *Id., quoting, Loew v. Gillespie*, 90 Misc. 616, 619, 153 N.Y.S. 830, 832 (1915), *aff'd*, 173 App.Div. 889, 157 N.Y.S. 1133 (1st Dep't 1916).

In this case, BFE & M withdrew from its representation of Harte in favor of another client. The court is convinced that BFE & M acted in good faith and that the conflict arose inadvertantly. However, "with rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship." *Cinema 5, Ltd.*, 528 F.2d at 1386 *quoting Matter of Kelly*, 23 N.Y.2d 368, 376, 296 N.Y.S.2d 937, 244 N.E.2d 456 (1968).

▪ Canon 9 of the Code of Professional Responsibility provides that "[a] lawyer should avoid even the appearance of professional impropriety." The purpose of Canon 9 is to preserve public confidence in the bar and in the legal process. *Norton v. Tallahassee Memorial Hospital*, 689 F.2d 938, 941 (11th Cir.1982). This circuit relies upon a two-prong test for determining when disqualification under Canon 9 is warranted. First, there must have been "some specifically identifiable impropriety." *Norton*, 689 F.2d at 941. Second, "the likelihood of public suspicion or obloquy must outweigh the social interests that will be served by the attorney's continued participation in the case." *Id.*

Disqualification of BFE & M is warranted under Canon 9. As discussed in detail above, BFE & M breached its duty of loyalty to Harte when it withdrew its representation. This breach satisfies the first prong of the test set forth in *Norton*.

The court finds that the likelihood of public suspicion or obloquy in this case

outweighs the social interests that will be served by BFE & M's continued participation. As mergers between law firms become more common, attorneys are increasingly likely to find themselves opposing a client after a merger. Public confidence in lawyers and the legal system must necessarily be undermined when a lawyer suddenly abandons one client in favor of another. This is true regardless of the nature and extent of the representations of the clients involved and the size of the firm, how many separate offices it may maintain, or the number of jurisdictions in which the firm or its members may practice. *In re ESM Government Securities, Inc.*, 66 B.R. 82, 84 (S.D.Fla.1986).

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion to Disqualify Baskin Flaherty Elliot & Mannino, P.C. is GRANTED. This cause shall stand abated for twenty (20) days so as to permit First Pennsylvania Bank the opportunity to secure new counsel.

IT IS FURTHER ORDERED that the Motion for Continuance of Trial Date filed by defendant be and the same is GRANTED. This case is removed from the two-week trial calendar commencing Monday, March 16, 1987 and will be rescheduled upon further Order of this court.