**PICKER INTERNATIONAL, INC., Plaintiff,**

v.

**VARIAN ASSOCIATES, INC., Defendant.**

**Civ. A. No. C 86–327.**

United States District Court, N.D. Ohio, E.D.

Oct. 13, 1987.

William W. Falsgraf, Randall L. Solomon, Baker & Hostetler, Cleveland, Ohio, for plaintiff.

James H. Woodring, Squire, Sanders & Dempsey, Cleveland, Ohio, Albert E. Fey, Jesse J. Jenner, and Kevin J. Culligan, Fish & Neave, New York City, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Picker International, Inc. ("Picker") is suing Varian Associates, Inc. ("Varian") in a patent dispute. The matter now before the Court is a motion by Varian to disqualify Picker's counsel, the law firm of Jones, Day, Reavis & Pogue ("Jones Day"). The parties have fully briefed the issues involved, and a hearing was held on October 6, 1987. For the reasons set forth below, and mindful that this is a drastic action, the Court grants Varian's motion.

### I.

Varian had been represented in a number of matters by the Chicago law firm of McDougall, Hersh & Scott ("MH & S"), including five that are on-going. MH & S was chief counsel in some, if not all, of those matters. In particular, MH & S, along with local counsel, had been representing Varian in a suit in California against the Genus Corporation. Over the past twenty years, Varian had paid MH & S over $500,000 in counsel fees.

Picker was a major client of Jones Day, and has been represented by them, or one of their predecessors, since 1911. Over the past fifteen years, Jones Day has represented Picker in over one hundred cases, and is now their exclusive patent counsel.

Sometime in late 1986, Jones Day and MH & S agreed to merge their two firms. This was announced to the public, and Varian learned of the merger in November only when one of its officers read a newspaper article. In December, shortly after learning of the merger, Varian contacted MH & S and expressed concern that a conflict of interest would soon occur, as the merged firm ("new Jones Day"), as counsel for Picker, would be suing Varian, its client, in the present case.

By a December 31 letter, an attorney at MH & S asked Varian to consent to new Jones Day representing Picker in this matter. He assured Varian that elaborate screening procedures would be established so that all of Varian's confidences would remain secret. If a law firm is to sue a current client, the ethics rules require that at the very least both clients must agree to the antagonistic representation. D.R. 5–105(C); Model Code 1.7. On January 9, Varian wrote to MH & S, rejecting this proposal and again expressing its concern regarding the potential conflict of interest.

On Tuesday, January 27, 1987, MH & S advised Varian that it was withdrawing as Varian's counsel in all cases as of Saturday, January 31. On Sunday, February 1, MH & S merged with Jones Day.[1]

---

1. New Jones Day continues to represent Varian in the five MH & S matters under an agreement that the status quo would be preserved until this Court decided the disqualification motion. The parties disagree on whether that agreement was reached on January 30 or February 9, but the Court tends to credit the February 9 date. The Court notes that, consonant with the agreement, it has not used any subsequent representation by new Jones Day as a factor in deciding the disqualification motion.

## II.

The problem facing Jones Day and MH & S was a difficult one, but this Court firmly believes that they have reached the wrong solution. Jones Day had a very large, and presumably very lucrative, client in Picker, which it did not wish to offend, never mind lose. MH & S had a far smaller client in Varian. When Jones Day and MH & S merged, if nothing was done, one of new Jones Day's clients would be suing another, and new Jones Day would be involved in that case (this case) and would thus be suing its own client in violation of the ethics rules.[2]

New Jones Day's first response was the most practical: it sought to obtain the agreement of both Varian and Picker to its representing Picker in a suit against Varian, thus fulfilling one requirement of D.R. 5–105(C).[3] Because it believed that none of its lawyers had been involved in any matter involved in this litigation, a question which the Court does not reach, it would also fulfill the second requirement of 5–105(C): meeting the objective standard of adequate representation.

However, when Varian did not agree to this proposal, a position well within its rights as a client, new Jones Day was hard pressed to find a solution. Varian notes that new Jones Day had three alternatives.

It could cease to represent Picker in all matters, and thus avoid the conflict of suing a client; it could cease to represent Varian in all (but far fewer) matters, and similarly avoid the conflict; or it could simply withdraw from the case at hand. The ethics rules do not prohibit a firm from representing two clients who are suing each other, in fact, it happens often; what is prohibited is that the firm may not represent either of the clients *in that suit.*

At oral argument Picker also stated that Jones Day had three choices, albeit a different three. It could have MH & S resolve the conflict (presumably by either gaining Varian's consent or dropping Varian as a client); it could forego the merger; or it could withdraw in this case.

The Court recognizes only the last choice in both sets as legitimate. A firm may not drop a client like a hot potato, especially if it is in order to keep happy a far more lucrative client. *See* Bar Assoc. of Nassau Cty. Comm. on Professional Ethics, Op. No. 86–1, Law.Man. on Prof.Conduct (ABA/BNA), Curr.Rpts.Vol. 2 at 96 (Feb. 19, 1986) (attorney may not drop one client in order to sue that client on behalf of a more lucrative second client, *even if the first client consents*); *H.G. Gallimore, Inc. v. Abdula,* No. 85 C 7190, Law.Man.

---

**2.** The Court makes frequent mention of the ethics rules in general. Any time a specific reference is made, it is to the Code of Professional Responsibility, which the Ohio Supreme Court adopted on October 5, 1970. It is beyond question that the ethics rules generally prohibit the simultaneous representation of adverse interests, whether or not the two matters are substantially related. *See generally* Law.Man. on Prof.Conduct (ABA/BNA) 51:102–103.

**3.** Disciplinary Rule ("D.R.") 5–105 permits an attorney to undertake adverse representation of a client if both clients give fully informed consent, and if "it is obvious" that the attorney can fully represent the interests of each.

DR 5–105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment,

or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if its is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation in the exercise of his independent professional judgment on behalf of each.

(D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment.

on Prof.Conduct (ABA/BNA), Curr.Rpts. Vol. 3 at 41–42 (N.D.Ill., Jan. 28, 1987) (firm may not cure disqualification by disassociating from adverse party in other matters).

The rationale behind this rule is that a firm owes a client a duty of undivided loyalty. *See generally* La.Man. on Prof. Conduct (ABA/BNA) 51:102–103 and cases cited therein. This is true even though a firm may cease representing a client before the disqualification motion is made. Otherwise, a firm could avoid D.R. 5–105 by simply converting a present client into a former one. *See United Sewerage Agency v. Jelco, Inc.,* 646 F.2d 1339, 1345 n. 4 (1981); *Harte Biltmore v. First Pennsylvania Bank,* 655 F.Supp. 419, 421 (S.D.Fla. 1987); *Margulies by Margulies v. Upchurch,* 696 P.2d 1195, 1202–03 (Utah 1985); *see also Ransburg Corp. v. Champion Spark Plug Co.,* 648 F.Supp. 1040, 1044 Law.Man. on Prof.Conduct (ABA/BNA), Curr.Rpts.Vol. 2 at 268–69 (N.D.Ill. June 30, 1986).

New Jones Day had a Hobson's choice— it had to cease representing Picker in this case. Only in that manner could the firm act consistently with the code of ethics that the profession of law requires.

New Jones Day suggests that Varian was never its client. This is disingenuous to say the least. Varian was quite clearly MH & S's client before the merger, and was thus just as clearly new Jones Day's client after the merger. But new Jones Day also implies that there was no merger. According to new Jones Day, MH & S simply disbanded, and some of the old MH & S attorneys joined Jones Day. However, Jones Day's own engraved announcement notice refers to this as a merger between MH & S and Jones Day, and the MH & S lawyers speak of it as a merger. Perhaps most importantly, though, all but one of the MH & S lawyers joined the new Jones Day law firm.

In *Harte Baltimore,* 17 attorneys left the firm which had been representing the plaintiff ("Dilworth") and joined with another firm ("Baskin"). That new firm ("BFE & M") became the plaintiff's new counsel. An attorney at Baskin, who also became part of BFE & M, represented one of the defendants in a completely separate action. To solve the conflict, BFE & M, like new Jones Day here, dropped its representation of the individual defendant in favor of the plaintiff, a bank. The district court disqualified BFE & M from representing the plaintiff bank, for reasons similar to these relied upon by this Court.

It is this refusal to accept the merger as a merger which permeates new Jones Day thinking. In oral argument, counsel argued that it was incumbent on *MH & S* to resolve the conflict of interest problem, and that *MH & S* simply followed the ethics rules, particularly D.R. 2–110(B), in abandoning Varian.[4] According to new Jones Day, Varian was never *its* client, and so there was never any conflict of interest involving Jones Day. It is true that Varian was never Jones Day's client, but it was always *new* Jones Day's client. New Jones Day is a separate law firm from old Jones Day, just as surely as if the merged firm was called Jones, Day, Hersh and Scott, rather than Jones, Day, Reavis and Pogue. The conflict of interest belonged to the new firm, and it was the new firm which had to resolve it.[5] Jones Day argues that MH & S

**4.** D.R. 2–110(B) states:

WITHDRAWAL FROM EMPLOYMENT.

(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

(1) He knows or it is obvious that his client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken for him, merely for the purpose of harassing or maliciously injuring any person.

(2) He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule.

(3) His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively.

(4) He is discharged by his client.

**5.** Jones Day also attempts to distinguish the cases the Court relies upon, particularly *Harte Biltmore,* by noting that in those cases the withdrawal occurred after the firm represented the

was simply following D.R. 2–110(B) in withdrawing from Varian's representation. But D.R. 2–110(B) does not say *which* case must be withdrawn from. It is clear to this Court that D.R. 2–110(B) applies to the merged law firm, not to the old MH & S, and that the withdrawal must be from the one conflicting case, and not from all of the cases on one side. New Jones Day could no more abandon Varian because it was a former client of MH & S than old Jones Day could abandon a client because it was a former client of Jones, but not of Day, Reavis and Pogue.

The Court is mindful that this decision may injure Picker, through no fault of its own. However, a different result would injure Varian, also through no fault of its own. The amount of money each client spent on counsel is irrelevant. The Court will not decide the proper course of action by only balancing the equities, even if such a balancing could be made. Something more important is also at stake here: the public perception of lawyers and of the administration of justice. Canon 9 states that a lawyer should avoid even the suggestion of impropriety. Public confidence would be greatly shaken if a firm could simply drop one client in order to take on a more lucrative one.

> As mergers between law firms become more common, attorneys are increasingly likely to find themselves opposing a client after a merger. Public confidence in lawyers and the legal system must necessarily be undermined when a lawyer suddenly abandons one client in favor of another. This is true regardless of the nature and extent of the representations of the clients involved and the size of the firm, how many separate offices it may maintain, or the number of jurisdictions in which the firm or its members may practice. *In re ESM Government Securities, Inc.* 66 B.R. 82, 84 (S.D.Fla.1986).

*Harte Biltmore*, 655 F.Supp. at 419.

*See also* Bar Assoc. of Nassau Cty. Comm. on Professional Ethics, Op. No. 86–1, Law. Man. on Prof.Conduct (ABA/BNA), Curr. Rpts.Vol. 2 at 96;

As Picker noted in oral argument, the ethics rules were promulgated to protect clients and to lay out a road map for attorneys to follow. D.R. 5–105 would be a sham if a firm could hang a sword of Damocles over a client: "Consent! Or we will cease to represent you." *See Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1345 n. 4 (1981).

Although this case commenced in February 1986, an answer was not filed until July. By November, four months later, Jones Day knew that there would be a conflict of interest. By December, Jones Day knew that Varian would not consent to its representing Picker in this case. It is now October 1987. Ten months have gone by since Varian moved to disqualify new Jones Day. Had new Jones Day withdrawn when it knew that the conflict was unavoidable, new counsel could, by now, have become well acquainted with the case.

No disqualification is to be decided lightly. But in situations of conflict, the presumption is in favor of disqualification. Because the Court reaches its decision in the way it does, it need not address Varian's additional arguments relating to Canon four and the keeping of confidences. Varian's motion to disqualify "new" Jones Day as counsel for Picker in this case is granted.

IT IS SO ORDERED.

---

clients, while here the withdrawal of representation occurred before the February 1 merger. This is a distinction without a difference. The argument is just another variation on Jones Day's argument that Jones Day never acquired Varian as a client, an argument the Court rejects.