**CONCERNED PARENTS OF JORDAN PARK, etc. et. al., Plaintiffs,**

v.

**The HOUSING AUTHORITY OF the CITY OF ST. PETERSBURG, FLORIDA, Defendant.**

**No. 95–1719–CIV–T–25(C).**

United States District Court, M.D. Florida, Tampa Division.

Aug. 6, 1996.

Stephen Forcey Hanlon, Theodore W. Small, Jr., Robert L. Paver, Holland & Knight, Washington, DC, for plaintiffs.

Richard Allen Nielsen, Ricardo L. Gilmore, Salem, Saxon & Nielsen, P.A., Tampa, FL, for defendant.

## CORRECTED ORDER

ADAMS, District Judge.

Before the Court is Defendant's Motion to Disqualify Holland & Knight as counsel for Plaintiffs (Dkt. 14) and Plaintiffs' response (Dkt. 23). For the following reasons, the

Court determines that the motion should be denied.

## I. BACKGROUND

Plaintiffs allege that Defendant maintains public housing units contaminated with lead based paint which have caused and continue to cause injury to numerous children who reside there. The law firm of Holland & Knight through its Community Services Team and Gulf Coast Legal Services have undertaken to represent residents of Jordan Park *pro bono publico.*

At least three years prior to the filing of this law suit, the former Executive Director of the St. Petersburg Housing Authority ("SPHA"), Edward White, retained attorney James D. Eckert to represent him in an action against SPHA. In January of 1995 Mr. Eckert joined the law firm of Holland & Knight. SPHA now claims that Holland & Knight's representation of Plaintiffs is unethical in light of their representation of Edward White.

An order of disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instr. Co.,* 689 F.2d 715, 721–22 (7th Cir.1982). The Court concurs with Plaintiffs assertion that disqualification of Holland & Knight from the prosecution of this action could significantly impair Plaintiffs' ability to prosecute this action. The willingness to commit the time and money put forward by Holland & Knight to a case of this nature is not easily replicated.

## II. TIMELINESS

■ The first ground for denial of this motion is its untimeliness. Defendant knew several months prior to filing this action that Holland & Knight represented Mr. White. Yet, Defendant waited until five months after the filing of this suit and eight months after the filing of a related case, to raise the issue. This Court attempts to move its cases to trial within one year. This case is set for trial in November, 1996, with a discovery cut-off of

May 17, 1996. Thus, Defendant's delay in filing its motion less than two months prior to the close of discovery is extremely prejudicial both to Plaintiffs, who had to divert their resources to respond, and to the public's interest in an expedient resolution of this action. Defendant's failure to timely raise its objection operates as a waiver of its right to object. See *Cox v. American Cast Iron Pipe, Co.,* 847 F.2d 725 (11th Cir.1988) (citing *Jackson v. J.C. Penney,* 521 F.Supp. 1032, 1034–35 (N.D.Ga.1981)).

## III. EX PARTE COMMUNICATION WITH FORMER EMPLOYEE

■ Defendants contend that Plaintiffs' counsel's ex parte communication with Mr. White is an ethical violation of Model Rule 4.2.[1] Both the American Bar Association and the Florida Bar Association have issued ethics opinions finding that 4.2 does not prohibit ex parte communications under the circumstances herein. Neither the Eleventh Circuit Court or the Florida Supreme Court have issued definitive ruling on this issue and the Courts in this District are split on the application of Rule 4.2 to former employees. Compare, *Rentclub, Inc. v. Transamerica Rental Finance Corp.,* 811 F.Supp. 651 (M.D.Fla.1992) (J. Kovachevich holding that ex parte communication with all former employees is prohibited); *Rewis v. FMC Corporation,* Case no. 88–47–CIV–T–19(C) (M.D.Fla.1989) (J. Hodges holding that ex parte communications with former managerial employees did not violate 4–4.2 of the *Rules Regulating the Florida Bar.*); *Lang v. Reedy Creek Improvement District,* 888 F.Supp. 1143 (M.D.Fla.1995) (J. Fawcett holding that ex parte communications with former employees are permissible, with limitations.)

■ This Court concurs with Judges Fawcett and Hodges in concluding that Rule 4.2 does not require a blanket prohibition on ex parte communication with former employees. The Florida Bar Ethics Opinion notes that in

---

1. Rule 2.04(c) of the Local Rules for the Middle District of Florida provides that:
    The professional conduct of all members of the bar of this Court ... shall be governed by the Model Rules of Professional Conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida....

cases where the interests of the former manager are not allied with the employer, "conflict of interests would preclude the corporation's attorney from actually representing the individual and therefore would preclude the corporation's attorney from controlling access to the individual." FL Eth. Op. 88–14 (1989). The Court concurs with the conclusion reached in FL Eth. Op. 88–14 that when the former manager is not represented by the corporation's attorney, the inquiring attorney is limited only with regard to inquiring about matters within the corporation's attorney-client privilege.

In this case, Plaintiffs' counsel knew that Mr. White was not represented by SPHA's attorneys and was in fact engaged in litigation against SPHA. Under those circumstances, Plaintiffs' counsel was only ethically obliged to advise Mr. White not to divulge information subject to the attorney-client privilege between Mr. White and SPHA's attorneys. It is apparent that Plaintiffs' counsel were aware of their ethical obligations prior to contacting Mr. White. One of Plaintiffs' attorneys, Steven Hanlon, submitted an affidavit in support of his opposition to the motion to disqualify in which he states that:

> Sometime in early 1995 … I arranged to meet with Mr. White, together with several other lawyers working on this case. At the outset of my meeting with Mr. White, I advised Mr. White that we were considering filing lawsuits against the SPHA on behalf of several tenants and/or former tenants at the Jordan Park housing complex for lead paint poisoning of their children while they resided at the Jordan Park housing complex. I then advised Mr. White that I was aware that he had been the Executive Director at the SPHA and that in that capacity may have had some conversations with lawyers for the SPHA concerning lead paint at Jordan Park. I told Mr. White that in the event that he had had any such conversations with any

such lawyers, I did not want to know anything that he said to them or that they said to him because I regarded any such conversations as confidential and privileged. Mr. White assured me that if he had had any such conversations with any such lawyers for the SPHA, he would not reveal anything that was said to him by such lawyers or anything he said to any such lawyers. We then discussed matter pertaining to the facts and issues in this litigation.

Given the representation made by Mr. Hanlon, the Court finds that Plaintiffs' counsel fully complied with their ethical obligation in their ex parte conversations with Mr. White.

The Court further finds that Defendant presents no factual support for its assertion that Mr. White was privy to "privileged and confidential information concerning the matter in litigation." Nor does the instant case bear significant factual similarity to the cases cited by Defendant in support of its contention that Plaintiffs committed ethical violations.

For example, Defendants do not allege that any lead based paint issues were being litigated while Mr. White was employed by SPHA. Therefore, unlike *Camden v. The State of Maryland*, 910 F.Supp. 1115 (D.Md. 1996), there is no allegation that Mr. White investigated Plaintiff's claims. Further, this case is not analogous to either the *Rentclub* or *MMR/Wallace Power & Indus. Inc. v. Thames Assoc.*, 764 F.Supp. 712, 718 (D.Conn.1992) cases cited by Defendant. In those cases, counsel *paid* former employees who had actually worked with opposing counsel to serve as "trial consultants." Again, there is no allegation that Plaintiffs offered to compensate Mr. White for any information or assistance,[2] nor is there a shred of evidence that Mr. White worked with counsel on any lead based paint litigation.

**2.** Defendant states that "If Holland & Knight is representing White on a pro bono basis or for some sort of reduced or discounted fee, further suspicions are raised." If Defendant had a factual basis to make such an assertion, rather than raising the issue obliquely, the Court would be inclined to agree. But the record is clear, Mr. White retained Mr. Eckert to represent him several years prior to Mr. Eckert joining Holland & Knight. The Court will not rely on Defendant's innuendo to disqualify Plaintiffs' counsel.

**410**

The Court therefore finds that Plaintiffs' counsel did not commit an ethical violation by engaging in ex parte communication with Mr. White.

## IV. APPEARANCE OF IMPROPRIETY

### A. Applicability of the Standard

█ The last issue the Court must decide is Defendant's assertion that Holland & Knight's representation of both Mr. White and the Plaintiffs in this action gives the appearance of impropriety. Canon 9 of the American Bar Association's Model Code of Professional Responsibility states, "(a) lawyer should avoid even the appearance of professional impropriety." However, the Model Code was replaced by the Model Rules which does not contain any such provision. Florida replaced the Model Code with the Model Rules in January, 1987.

The Florida Supreme Court and the Eleventh Circuit Court of Appeals hold divergent views as to the use of "appearance of impropriety" as a ground for disqualification of counsel. In *Waters v. Kemp*, 845 F.2d 260, 265 (11th Cir.1988), the Eleventh Circuit, interpreting Georgia law, held that a motion to disqualify counsel based upon Canon 9 of the old Model Code was meritless because Georgia had adopted the Model Rules. *Id.* However, the Florida Supreme Court has held that the fact that the Model Rules do not contain an admonition to avoid the appearance of impropriety did not require courts to alter the standard it applies in conflict of interest cases. *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So.2d 630, 633 (Fla.1991).

Plaintiffs argue that this Court should follow the Eleventh Circuit precedent rather than the Florida Supreme Court, however the authority they cite in support of that proposition is not persuasive. Because our Local Rules provide that the Model Rules of Professional Conduct, *as modified and adopted by the Florida Supreme Court*, govern attorneys' conduct, the Court finds that the Florida Supreme Court's interpretation

of the Florida Rules to be more persuasive than the Eleventh Circuit's interpretation of Georgia's rules. Accordingly, the Court will analyze counsels' actions under the appearance of impropriety standard.

### B. The Hobson/Norton Standard

█ Both parties agree that the standard this Court must apply is a two part test developed by Eleventh Circuit case law, specifically *United States v. Hobson*, 672 F.2d 825, 828 (11th Cir.) *cert. denied* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982) and *Norton v. Tallahassee Memorial Hospital*, 689 F.2d 938, 941 (11th Cir.1982). If there is no evidence of actual wrongdoing, "there must be at least a reasonable possibility that some specifically identifiable impropriety did occur." *Hobson* 672 F.2d at 828. The Court must then find that the "likelihood of public suspicion or obloquy outweighs the social interest would be served by a lawyer's continued participation in a particular case." *Id.* The *Norton* Court adds the further admonition that disqualification should be used sparingly where it would work a substantial hardship on the client. *Norton*, 689 F.2d at 941 n. 4.

#### 1. *Possibility of Past Impropriety*

█ Defendant bases its argument with regard to the first part of the *Hobson/Norton* test on legal presumptions, not fact. Defendant begins with the presumption that the nature of attorney-client relationship between Holland & Knight and Mr. White is intended to encourage Mr. White to reveal to his counsel confidential matters. Indeed, Defendant argues that the Court must assume that confidential matters were discussed by Mr. White with his counsel. See *State Farm Mutual Automobile Insurance Co. v. K.A.W.*, 575 So.2d 630, 633 (Fla.1991). Thus, Defendant claims that Plaintiffs should not benefit from the disclosure of such confidential communication.

Defendant's argument fails on the facts, or more specifically the lack thereof. As noted above, Mr. White was not employed by SPHA when the present suit was initiated.[3]

**3.** Indeed, Plaintiffs contend that the suit was not even contemplated at the time Mr. White was terminated in 1992.

Nor does Defendant allege that Mr. White was privy to privileged communications concerning lead based paint in SPHA buildings, information squarely within Defendant's possession.

Instead, Defendant relies on the fact that Mr. White was highly placed in SPHA to argue that he had "access to privileged and confidential communications." Once again, Defendant offers vague assertions rather than concrete facts. Defendant does not even offer a hint as to what confidential information or communications it claims Mr. White had access. Defendant's failure to specifically allege the nature of the matters it claims are confidential would probably preclude disqualification under ordinary circumstances. Under the circumstances of this case it is even less credible.

■ SPHA is a public entity, and Mr. White was a public servant. Under Florida's government in the sunshine law, public bodies such as the SPHA cannot have confidential meetings and discussions nor keep documents from public view except under very narrow and limited circumstances. See Florida Statutes, Chapters 119 and 286. Even the attorney-client privilege is not generally extended to communications between lawyers and governmental clients. *City of North Miami v. Miami Herald Publishing Co.*, 468 So.2d 218, 220 (Fla.1985). Although there is an exception to the Public Records Act for pending and imminent litigation, Fla.Stat. § 119.07(3)(*l*), SPHA was not engaged in any such litigation at the time Mr. White was its executive director.

The Court therefore finds that Mr. White is not likely to possess any information for which SPHA can claim confidentiality, thus there is no "reasonable possibility" of impropriety.

### 2. *Public Suspicion v. Social Interest*

■ Likewise, the Court disagrees with Defendant's argument that public suspicion would outweigh the social interest in allowing Holland & Knight to represent Plaintiffs.

Once again, Defendant attempts to rely on the presumption that where confidential information was received there is "at least an appearance that [the party] has obtained an unfair advantage at trial." *MMR/Wallace*, 764 F.Supp. at 727. However, that presumption begins with the premise that counsel possesses confidential information which has not been shown to exist in this case.[4]

If anything, the public should be suspicious of Defendant's attempt to disqualify Holland & Knight from this case. The Community Services Team at Holland & Knight brings a unique and powerful force to bear on issues affecting traditionally unrepresented and underrepresented individuals. It has the financial ability and legal acumen to prosecute complex cases *pro bono publico,* in the public interest, without charge to its clients. The cases it addresses generally, and this case in particular, present unique issues that few private lawyers have the resources to address.

In conclusion, the Court finds that the societal interest in having experienced, well funded counsel prosecute a case of great public concern far outweighs the remote and speculative possibility of an appearance of a conflict of interest.

It is therefore **ORDERED:**

1. Defendant's Motion to Disqualify Holland & Knight (Dkt. 14) is **DENIED.**

2. Discovery stays imposed due to the pendency of the Motion to Disqualify are lifted.

**DONE** and **ORDERED.**

---

**4.** Unlike the findings made herein, the *MMR/Wallace* court found that counsel hired the former employee to obtain information to which he was not entitled, thus discounting counsel's contention that no confidential information was disclosed.