**THE METRAHEALTH INSURANCE COMPANY, et al., Plaintiffs,**

v.

**ANCLOTE PSYCHIATRIC HOSPITAL, LTD., Defendants.**

No. 96–2547–C.V.–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

April 11, 1997.

Warwick R. Furr, II, Edwin G. Rice, Glenn, Rasmussen & Fogarty, Tampa, FL, Thomas W. Brunner, Thomas W. Queen, Kirk J. Nahra, David L. Douglass, Scott S. Harris, Wiley, Rein & Fielding, Washington, DC, for Metrahealth Ins. Co. and Prudential Ins. Co. of America.

Douglas Jules Titus, Jr., George & Titus, P.A., Tampa, FL, Rodney F. Page, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Anclote Psychiatric Hosp., Ltd., Goldsel/Anclote, Inc., Retreat Psychiatric Hosp., Ltd. and Goldsel/Retreat, Inc.

Marion Hale, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, FL, for Sun Coast Hosp., Inc.

William C. Potter, Potter, McClelland, Marks & Healy, P.A., Melbourne, FL, for Heritage Gulf Shores Institute, Inc.

John F. Lauro, John F. Lauro, P.A., Tampa, FL, for Richard Tyson.

James Maxwell Landis, Monta M. King, Foley & Lardner, Tampa, FL, Matthew B. King, Wolman, Babitt & King, LLP, New York City, for Heritage Gulf Shores Institute, Inc., Progressive Health Corp., William Demaria and Peter Stratton.

## ORDER

KOVACHEVICH, Chief Judge.

This cause is before this Court on Defendant Sun Coast Hospital, Inc.'s Motion to Disqualify Counsel for Plaintiffs and supporting memorandum of law (Dkt.7) and the memorandum of Plaintiff Metrahealth Insurance Company, et al., in opposition (Dkt.20).

The Court also has for consideration the following:

Dkt. 6 Motion to Stay Litigation

Dkt. 19 Response

Dkt. 21 Motion to Stay Proceedings

Dkt. 32 Response

Dkt. 22 Motion to Conduct Limited Discovery

Dkt. 29 Motion to Conduct Limited Discovery

Dkt. 37 Response

## FACTUAL BACKGROUND

Plaintiffs Metrahealth Insurance Company and Prudential Insurance Company of America filed this action on December 12, 1996, alleging that Defendants Anclote Psychiatric Hospital, Goldsel/Anclote, Inc., Retreat Psychiatric Hospital, Ltd., and Goldsel/Retreat, Inc., Sun Coast Hospital, Inc., Heritage Gulf Shores Institute, Inc., Recovery Management Corp., and Richard Tyson engaged in a complex scheme to defraud Plaintiffs and other third-party payors (both governmental and private) by means of an elaborate referral network extending throughout the United States.

Plaintiffs allege that Defendant: Sun Coast Hospital, Inc. provided unnecessary psychiatric and substance abuse treatment to patients in a program known as the Recovery Bridge Program from 1990 through 1995. Sheri Scarbrough, one of Defendant's employees, was involved in the treatment of such patients. In March of 1995, Scott Coffina, who was then employed by the law firm of Wiley, Rein & Fielding (hereinafter, "WR & F"), learned that Sheri Scarbrough (hereinafter, "Scarbrough") was a former marketer for two different facilities that are the subject of this litigation. Scott Coffina (hereinafter, "Coffina") contacted Scarbrough on March 14, 1995. At that time, Plaintiffs allege that Coffina was unaware that Scarbrough was employed by Sun Coast Hospital. Plaintiffs further allege that upon the initial contact with Scarbrough, Coffina immediately identified himself as a Lawyer that represented several insurance companies and informed her that he was investigating health care fraud. Plaintiffs assert that Coffina asked Scarbrough if she would meet with him to discuss her knowledge of patient brokering. Plaintiffs maintain that Scarbrough agreed to do so.

Contrary to Sun Coast's assertion, Plaintiffs allege that Coffina learned for the first time that Scarbrough was employed by Sun Coast Hospital when he contacted her the next week to confirm their meeting. Plaintiffs allege that Coffina was under the impression that Scarbrough was unemployed. Coffina contacted Scarbrough a third time to postpone their meeting. Plaintiffs maintain that Scarbrough suggested that she was disinclined to discuss patient brokering and related topics; however, she suggested that Coffina contact her if he was ever in town.

In April of 1995, when Coffina made a trip to Florida, he contacted Scarbrough at Sun Coast Hospital. It is undisputed that the two arranged to have dinner that evening. Defendants allege that Scarbrough told Coffina that she did not want to discuss the program. Defendant further alleges that during dinner Coffina asked Scarbrough a question regarding the Recovery Bridge Program, which she answered. On the other hand, Plaintiffs maintain that Scarbrough voluntarily referred to the Recovery Bridge Program and Sun Coast Hospital a limited number of times when she responded to questions about other persons and facilities. Plaintiffs further maintain that these references were not pursued in any way.

## STANDARD OF REVIEW

The disqualification of one's chosen counsel is an extraordinary measure that should be resorted to sparingly. *Arcara v. Philip M. Warren, P.A.*, 574 So.2d 325, 326 (Fla. 4th DCA 1991) (citing *General Accident Insurance Co. v. Borg–Warner Acceptance Corp.*, 483 So.2d 505 (Fla. 4th DCA 1986)). The burden of proof to establish grounds for disqualification is on the party moving for disqualification. *Moyroud v. Itek Corp.*, 528 F.Supp. 707 (S.D.Fla.1981). An order for disqualification is a "drastic means which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–22 (7th Cir.1982).

■ The professional conduct of all members of the Bar of this court is governed by the model rules of professional conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida. Local Rule 2.04(c), U.S.D.C., Middle District. The Eleventh Circuit has adopted a two-prong test for disqualification under Canon 9 which prohibits the appearance of impropriety. *Norton v. Tallahassee Memorial Hospital,* 689 F.2d 938, 941 (11th Cir. 1982) (citing *United States v. Hobson,* 672 F.2d 825 (11th Cir.1982)). If there is no evidence of actual wrongdoing, "there must be at least a reasonable possibility that some specifically identifiable impropriety did occur." *Hobson,* 672 F.2d at 828. The Court must then find that the "likelihood of public suspicion or obloquy outweighs the social interest that would be served by a lawyer's continued participation in a particular case." *Id.* The *Norton* Court adds the further admonition that disqualification should be used sparingly where it would work a substantial hardship on the client. *Norton,* 689 F.2d at 941, n. 4.

### DISCUSSION

Defendants argue that the contact between Coffina and Scarbrough requires disqualification under Canon 9, which prohibits the appearance of impropriety under the Rules of Professional Responsibility.

Rule 4–4.2, Fla. Bar Code of Prof. Cond., upon which Defendant grounds its motion, provides in pertinent part:

(A) During the course of his representation of a client a lawyer shall not: (1) Communicate or cause to communicate on the subject of the representation with a party he knows to be represented by a lawyer in the matter unless he has had prior consent of the lawyer representing such other party or is authorized to do so.

The Comment to Rule 4.2 by the American Bar Association Commission on Evaluation of Professional Standards indicates that it is intended to preclude communication by a lawyer for one party with managing agents of a party that is a corporation or organization, for the reason that such individual speaks for the corporation. The Comment adds, however, that the Rule "does not prohibit communication with lower echelon employees who are not representatives of the organization."

First, Rule 4–4.2 does not act as a complete prohibition on contact with current employees. The Rule plainly provides that contact is permissible unless the organization is represented in the matter and the individual has "managerial responsibility" or is otherwise a "person whose act or omission in connection with the matter may be imputed to the organization" or "constitute an admission on the part of the organization." Additionally, the Rule requires the attorney attempting to communicate with the person to "know" that the person is represented in the matter discussed.

To satisfy the first prong of the *Norton* test, Defendant must demonstrate: 1) that Coffina actually knew that Scarbrough was employed by Defendant; 2) that Scarbrough or Defendant were represented in this matter; and 3) even if Scarbrough or Defendant were represented in this matter, that Scarbrough had managerial responsibilities or that there was otherwise a significant likelihood that her statements would bind Defendant. The Court finds that Defendant has failed satisfy this prong.

■ Although there is some dispute as to exactly when Coffina learned that Scarbrough was employed by Defendant, there is no dispute that Coffina was aware of her employment at the time of the alleged *ex parte* communication. However, Defendant has failed to adequately show that Coffina "knew" that Scarbrough or Defendant was represented in this matter. In order for Rule 4–4.2's prohibition to even come into play, the attorney seeking to communicate with the person must "know" that the person is represented in the matter to be discussed. ABA Formal Op. 95–396 at 7. Moreover, the Rule requires "actual knowledge of the fact in question" and "does not ... imply a duty to inquire." *Id.* As the ABA has explained, requiring that an attorney have actual knowledge of representation "frames a rule of conduct that can as a practical matter reasonably be imposed" while preventing routine

fact-finding from becoming unnecessarily complicated. Defendant has offered no evidence to rebut Coffina's declaration that he had no knowledge at the time of the contact that Scarbrough or Defendant were represented in connection with the fraud scheme alleged in the complaint. In fact, Defendant does not allege that it was in fact represented by counsel in the matter in question at the pertinent time. Not only are there no circumstances from which Coffina could have inferred such representation, but Plaintiff's counsel was in the investigatory stages of this action, and no complaint had been filed. Furthermore, Plaintiffs had not even threatened to file suit at this time, or otherwise communicated with Defendant Sun Coast in any matter relating to this action.

■ Defendant Sun Coast relies upon the closing sentence of the June 5, 1995 letter from Thomas Brunner to Jeffrey Collins, Sun Coast Hospital's Chief Executive Officer, to suggest that WR & F knew Defendant was represented. Such letter reads in pertinent part: "[Y]ou may wish to consult Sun Coast Hospital's attorneys in connection with this matter." First, the pertinent time is April 24, when the alleged *ex parte* communication occurred, and not June 5, when the letter was written. Second, Plaintiffs assert that a general admonition that Defendant may wish to consult its attorneys about litigation threatened for the first time does not imply actual knowledge about existing representation (at the time of the communication) "in the matter," as the Rule plainly requires. The purpose of such admonition was to advise a lay person that he may wish to seek legal counsel regarding the serious issues addressed in the letter.

■ Defendant has also failed to adequately establish that Scarbrough had managerial responsibilities, or was a managing agent. Even if Scarbrough or Defendant were represented in the matter at the time of the alleged *ex parte* communication, there would still be no violation of Rule 4–4.2 un-

less Scarbrough exercised managerial responsibilities, or there was otherwise a significant likelihood that the communication elicited derogatory information that could be imputed to or bind the corporation.[1]

Defendant's mere assertion that, at some unspecified time, Scarbrough was the "manager of Community Services" is insufficient for a number of reasons. First, Rule 4–4.2 requires a demonstration that the person exercised "managerial" responsibilities. The Comment to the Rule provides that in the case of an organization, the rule prohibits communications by a lawyer for one party about the matter in the representation with:

> persons having managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

A bare contention that the person possessed a title that contained the word "manager" is inadequate. In the case of Chief Executive Officer, President, Vice President, or as in *Rentclub*, the Chief Operating Officer, one could draw certain inferences from the title alone. Given the uncertainty of the duties and responsibilities which attach to the plethora of titles in today's businesses and the resulting order in the corporate hierarchy, it is impossible to ascertain whether Scarbrough was a manager or was given managerial responsibilities as contemplated by Rule 4–4.2. The burden is upon the Defendant to make some proffer about Scarbrough's responsibilities. Defendant Sun Coast does not allege that "manager" is a formal title at Sun Coast Hospital, nor does it allege that Scarbrough held this "title" at the time of the alleged *ex parte* communication. Further, Defendant Sun Coast has failed to produce any documentation or other evidence describing Scarbrough's position or responsibilities. There is also some dispute

---

**1.** Courts have consistently rejected the proposition that Rule 4–4.2 prohibits all contacts with current employees. See, e.g., *In re Disciplinary Proceedings*, 876 F.Supp. 265 (M.D.Fla. 1993); ABA Comm. on Ethics and Professional Responsibility Formal Op. 359 (1991); *Carter–Herman v. City of Philadelphia*, 897 F.Supp. 899 (E.D.Pa. 1995); *Porter v. Arco Metals Div. of Atlantic Richfield*, 642 F.Supp. 1116 (D.Mont.1986).

as to exactly what title Scarbrough told Coffina she possessed. Plaintiff alleges that Scarbrough told him that she was a "marketer", not a manager of Community Services.

Finally, as to the first prong of the *Norton* test, there is no sufficient basis to contend that the meeting was likely to yield information that would later be used against Defendant. Plaintiffs allege that the questions posed by Coffina to Scarbrough specifically excluded matters pertaining to the Recovery Bridge Program and Sun Coast Hospital. Defendant bases its motion for disqualification upon one question and answer that occurred throughout the dinner meeting. Under these circumstances, the Court can reasonably infer that the conversation was not facilitated to elicit information that was likely to be imputed to or admitted by Defendant Sun Coast.

Because Defendant Sun Coast has failed to establish the first prong of the *Norton* test, disqualification of the WR & F law firm is improper. There is no justification for the drastic remedy of disqualification under these circumstances. The facts do not support a finding that the "likelihood of public suspicion" arising from the impropriety "outweighs the social interests" served by WR & F's continued representation of Plaintiffs. *Norton,* 689 F.2d at 941. Instead of raising the standard of legal ethics and the public's respect for judicial proceedings, disqualification in this case would have the effect of encouraging diversionary tactics while diminishing public confidence in the ability of the judicial process to redress serious wrongs. *See Panduit Corp., v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1577 (Fed.Cir.1984). Driven solely by the preoccupation with the disqualification issue, prolonged delay in addressing the merits of this case, in and of itself, can do little to instill confidence in the judicial system. *F.D.I.C. v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1317 (5th Cir.1995).

In view of the particular facts of this case, this Court finds that Plaintiff's right to counsel of its choice outweighs the harm of public suspicion. For the reasons set forth in this order, disqualification is unwarranted. Accordingly, it is

**ORDERED** that Defendant's Motion for Disqualification of Counsel (Dkt.7) is **denied.** The Motion to Stay Litigation (Dkt.6), Motion to Stay Proceedings (Dkt.21), Motion to Conduct Limited Discovery (Dkt.22), and Motion to Conduct Limited Discovery (Dkt.29) are **denied.**