**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Russell HOBSON, Defendant-Appellant.**

No. 82–5138.

United States Court of Appeals,
Eleventh Circuit.

March 24, 1982.

Clyde M. Taylor, Jr., Tallahassee, Fla., for defendant-appellee.

Nicholas P. Geeker, U. S. Atty., Pensacola, Fla., Kevin M. Moore, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before RONEY, KRAVITCH and CLARK, Circuit Judges.

PER CURIAM:

The defendant Hobson appeals from an order of the district court that disqualifies one of his attorneys from representing him in his trial scheduled to begin on March 8, 1982. Hobson is charged with violating federal laws pertaining to drug trafficking. Hobson moved that this appeal be expedited, that proceedings in the district court be stayed pending appeal, and requested oral argument. We granted the motion to expedite and the request for oral argument, but denied the motion to stay the proceedings in the district court pending appeal. We now affirm the order of the district court.

The trial court's disqualification order dated January 20, 1982, is based factually upon affidavits of two witnesses, Robinson and Alexander, whom the government represents will testify in Hobson's upcoming trial. The affidavit of Robinson states that, while he was at Hobson's attorney's office for a conference with respect to a pending case that the attorney was handling for Robinson, he "discussed with [the attorney] about [the attorney] getting in touch with Tom Alexander for the purpose of getting me work unloading marijuana. [The attorney] indicated that he would contact Alexander." The affidavit further states that, during Robinson's conversation with the attorney, Alexander came to the attorney's office.

The affidavits of Robinson and Alexander both reflect that while in the attorney's office they discussed the possibility that Robinson might assist in off-loading marijuana from a Constellation airplane in the near future. Both affidavits indicate that the attorney was in and out of his office while Robinson and Alexander discussed this future unloading, and Alexander's affidavit indicates that he is reasonably sure that the attorney had full knowledge of the context of this conversation. Alexander further states in his affidavit that Robinson and he were talking about a Constellation aircraft that was later apprehended at the Panama City airport in February 1979. A review of the indictment in this case discloses that defendant Hobson is alleged to have been one of the co-conspirators in the commission of this unlawful importation of marijuana, for which Hobson had paid one and a half million dollars.

The district court concluded that in the trial scheduled March 8, 1982, in which Hobson is one of the defendants, evidence of Hobson's attorney's alleged knowledge of some of the criminal activity that is the subject matter of this criminal case may be offered and, if so, would create a reasonable possibility of an appearance of an impropriety on the attorney's part. Further, the district court found that such evidence would bring before the jury an issue of the attorney's credibility which would operate to Hobson's detriment. Therefore, the district court disqualified the attorney from representing Hobson, relying upon Canon 9 of Florida's Code of Professional Responsibility, which has been adopted by the Northern District of Florida in its Rule 5(F). Hobson then brought this interlocutory appeal from the disqualification order.

A district court order disqualifying counsel is a "final order" appealable under 28 U.S.C. § 1291. *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 529 n.2 (5th Cir. 1981); *Woods v. Covington County Bank*, 537 F.2d 804, 809 (5th Cir. 1976). The standard of review to be applied in such appeals, however, is unclear. Finding that no Eleventh Circuit case has addressed this standard of review issue, we sought guidance from the cases of our predecessor, the former Fifth Circuit. Examination of the Fifth Circuit cases, however, revealed no consistent line of authority. Instead, we

found support for two distinct approaches to the standard of review issue.

In *In re Gopman*, 531 F.2d 262 (5th Cir. 1976), the court held that an order disqualifying counsel could be reversed only upon a showing of "abuse of discretion" by the district court. The court reasoned that disqualification orders are issued pursuant to the district court's inherent authority to take measures against unethical conduct occurring in connection with proceedings before it, and that this supervisory authority may be exercised within the sound discretion of the district court. *Id.* at 266.

One month after *Gopman* was decided, another panel of the Fifth Circuit decided *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976). In *Woods*, the court acknowledged that some courts had applied the "abuse of discretion" standard in reviewing disqualification orders, citing several cases including *Gopman*. 537 F.2d at 810 & n.7. The court noted, however, that "serious reservations" had been expressed by courts "about whether the scope of appellate review is limited to a finding of abuse of discretion in disqualification cases where only a purely legal question is at issue." 537 F.2d at 810. The court then declared:

> In disqualification cases such as this, where the facts are not in dispute, District Courts enjoy no particular functional advantage over appellate courts in their formulation and application of ethical norms. Thus, in this circuit, we have reviewed disqualification cases as we would most other appeals of a judge's findings, applying the "clearly erroneous" test to issues of fact while carefully examining a District Judge's application of relevant ethical standards. *See, e.g., American Can Co. v. Citrus Feed Co.*, 5 Cir., 1971, 436 F.2d 1125 (disqualification order reversed because contrary to controlling ethical principles); *Uniweld Products, Inc. v. Union Carbide Corp.*, 5 Cir., 1967, 385 F.2d 992, *cert. denied*, 390 U.S. 921, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968) (refusal to disqualify upheld because factual determination not clearly

erroneous). Consequently, we are empowered in this case to determine whether the District Court's disqualification order was predicated upon a proper understanding of applicable ethical principles. 537 F.2d at 810.

This conflict has resurfaced recently. In *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168 (5th Cir. 1979), the court adopted the *Woods* standard. *Id.* at 171. Just one year later, in *United States v. Salinas*, 618 F.2d 1092, 1093 (5th Cir.), *cert. denied*, 449 U.S. 961, 101 S.Ct. 374, 66 L.Ed.2d 228 (1980), the court followed *Gopman* and applied the "abuse of discretion" standard. Only several months ago, however, the court decided *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir. 1981), in which the *Woods* approach once again was followed.

We thus are faced with conflicting authority within the body of precedent by which we are bound. When confronted with conflicting precedent, we ordinarily reject the precedent that is inconsistent with either Supreme Court cases or the weight of authority within the circuit. *Gresham Park Community Organization v. Howell*, 652 F.2d 1227, 1235 (5th Cir. 1981). This approach is not helpful here, however, because we are aware of no Supreme Court authority on the issue and there is no clear weight of authority within the circuit. Therefore, we must resort to common sense and reason to determine the appropriate standard of review in this case.

We believe that in criminal cases, where the defendant's sixth amendment right to counsel is implicated, the conflict in our prior cases should be resolved in favor of the accused. The "abuse of discretion" standard is simply too deferential where such a fundamental constitutional right is affected. Although we recognize that the criminal defendant's right to *particular* counsel is not absolute, *see, e.g., United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980); *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir.), *cert. denied*, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979); *Gandy v. State of Alabama*, 569 F.2d 1318,

1323 (5th Cir. 1978); *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977), the right should be deprived only where such drastic action is necessary to further some overriding social or ethical interest. We find the *Woods* approach more appropriate in the criminal context because it provides a higher degree of protection for this right. Thus, we choose to review the challenged disqualification order as we would most other final orders of a district court, "applying the 'clearly erroneous' test to issues of fact while carefully examining a District Judge's application of relevant ethical standards." *Woods*, 537 F.2d at 810.

The findings of fact upon which the disqualification order was based are not clearly erroneous. Thus, we must examine the ethical standard, Canon 9, which the district court applied.

Canon 9 provides: "A lawyer should avoid even the appearance of professional impropriety." The purpose of Canon 9 is to preserve public confidence in the bar and in the legal process. This confidence "may be eroded by irresponsible or improper conduct of a lawyer." A.B.A. Code of Professional Responsibility EC 9–2. Because some conduct that is ethical in fact may be perceived by laypersons as unethical, members of the bar are held by Canon 9 to a standard that prohibits not only actual impropriety, but conduct that may simply appear to be improper. Thus, attorneys have been disqualified under the appearance of impropriety doctrine even where there was no evidence of actual wrongdoing. *Woods v. Covington County Bank*, 537 F.2d 804, 813 (5th Cir. 1976) (citing *General Motors Corp. v. City of New York*, 501 F.2d 639, 641 (2d Cir. 1974); *United States v. Trafficante*, 328 F.2d 117, 120 (5th Cir. 1964)).

■ In *Woods v. Covington County Bank, supra,* the court set forth a two-prong test for disqualification of an attorney under Canon 9. First, although there need not be proof of actual wrongdoing, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." 537 F.2d at 813. Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." *Id.* at 813 n.12. "Under Canon 9, an attorney should be disqualified only when both of these standards have been satisfied." *Id.*

Applying this standard to the facts of this case, we find that the first prong is easily satisfied. The affidavits of Robinson and Alexander describe "specifically identifiable impropriety" on the part of Hobson's attorney and establish a "reasonable possibility" that the impropriety occurred. Even though the allegations may be false, such evidence at the trial would nevertheless create the possibility in the minds of the jurors.

■ To apply the second prong of the test, we must balance the likelihood of public suspicion against the social interests served by the attorney's continued representation. This task becomes especially difficult in criminal cases, for the interest in permitting a criminal defendant to retain counsel of his choice is strong and deserves great respect. The right to counsel of choice is not absolute, however, and must give way where its vindication would create a serious risk of undermining public confidence in the integrity of our legal system.

■ After serious reflection on the circumstances of this case, we conclude that the likelihood of public suspicion outweighs Hobson's interest in being represented by the attorney in question. The two affiants, Robinson and Alexander, will be called at trial as government witnesses. While one cannot predict with certainty what evidence will be offered, it is reasonable to expect that they will testify as to the same allegations made in their affidavits. This testimony will portray Hobson's attorney as having engaged in thoroughly improper and unethical conduct and thus will impugn severely his integrity and credibility in the eyes of the jury. Moreover, at that point, the ordinary person would perceive the spe-

cifically identifiable impropriety in the attorney's continued representation of a co-defendant in a case where trial testimony makes the attorney a fact witness whether he chose to testify or not. Although the allegations in the affidavits may be untrue in fact, once the testimony is heard by the jury the damage will have been done—such testimony very likely could result in erosion of public confidence in the integrity of the bar and of the legal system, and this erosion is precisely what Canon 9 is designed to prevent.

We are aware that Hobson has indicated that he would be willing to waive any ethical problems in order to have the benefit of his attorney's continued representation in this case. The defendant is not free to waive the problem presented here, however, because the ethical violation involves public perception of the lawyer and the legal system rather than some difficulty in the attorney's effective representation of

Hobson. A defendant also cannot waive the impropriety of his lawyer's testifying in his favor at the trial if it should be determined that such testimony would be desirable for his defense. Under the facts of this case, Hobson's desire to be represented by particular counsel must yield to the need to protect the public's confidence in our system of justice.

For the reasons expressed in this opinion, the order of the district court disqualifying Hobson's attorney is affirmed.*

AFFIRMED.

KRAVITCH, Circuit Judge, concurring in part and dissenting in part:

While I fully agree with the majority as to the standard of review applicable to this case and also agree that the trial judge's findings of fact are not "clearly erroneous," I cannot concur in the legal conclusions reached by the trial court and affirmed by the majority.[1]

---

* The dissent asserts that our decision amounts to "a serious abrogation of the defendant's constitutional rights." We view this as an overstatement for two reasons. First, although the dissent states that the sixth amendment "has been interpreted to afford an accused the constitutional right to counsel of one's choice," every case cited in support of this proposition makes clear that the right to counsel of choice is not absolute. See *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932) (defendant entitled to *fair opportunity* to secure counsel of choice); *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir.), *cert. denied*, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979) ("A defendant's right to counsel of choice is not absolute and must yield to the higher interest of the effective administration of the courts."); *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978) ("it is a settled principle that the right to counsel of one's choice is not absolute as is the right to the assistance of counsel"); *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977) (right to counsel of choice is limited to some extent). Second, the dissent does not mention the fact that defendant Hobson was being represented by *two* attorneys of his choice prior to the disqualification of the attorney involved in this case. Our affirmance of the disqualification order in no way deprives Hobson of the continued representation of this other attorney. Thus, in any event, Hobson's right to counsel of choice is only partially affected by our decision.

This fact notwithstanding, however, the only absolute constitutional right involved in this case is the sixth amendment guarantee of the defendant's right to representation by counsel, and our decision does not "abrogate" this right by any stretch of the imagination.

The dissent also questions whether the testimony in the affidavits would impugn the integrity and credibility of Hobson's attorney in the eyes of the jury. This doubt is based on the perceived likelihood that "rather damaging impeaching material ... undoubtedly would be used to rebut the testimony ...." We believe that this approach misses the point. It may well be true that the testimony in the affidavits is completely false. Nevertheless, the allegations, regardless of their truth or falsity, will bring the attorney's integrity and credibility into question. The issue is not whether the attorney's impropriety will be *proven* in the eyes of the jury, but rather whether the allegations will engender public suspicion with regard to possible impropriety. We believe that where, as here, the allegations against the attorney are not inherently or facially incredible, the fact that such allegations may be rebutted does not remove the likelihood that public suspicion may result.

1. Although the trial court's findings of fact are binding because they are not clearly erroneous, his legal conclusions, including the application of the *Woods* balancing test, are subject to an independent determination on appeal. *E.g.*,

As the majority notes, disqualification based on an "appearance of impropriety" requires a careful balancing of the likelihood of public suspicion against the social interests served by the attorney's continued representation according to the facts of each case. In a criminal case, however, the "social interests" aspect of the balance is given an added dimension by the sixth amendment, which has been interpreted to afford an accused the constitutional right to counsel of one's choice. *E.g., Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir.), *cert. denied*, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979); *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978); *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977). Here, while the majority purports to give the defendant the "benefit of the doubt," a thorough examination of the "balance" reached indicates a serious abrogation of the defendant's constitutional rights. On the one hand, the likelihood of public suspicion is hardly as dramatic as the majority implies. Although the trial court found that the subject matter of the affidavits of Robinson and Alexander, when placed before the jury,[2] would create a suspicion that the attorney involved was compromising his client's interest, the facts showed (and the trial judge stated in his order) that both Robinson and Alexander were convicted felons and that Robinson's affidavit contradicted his grand jury testimony. Moreover, as appellant points out,

the affidavits themselves conflicted as to the time at which the meetings concerning marijuana offloading occurred. Given this rather damaging impeaching material which undoubtedly would be used to rebut the testimony of Robinson and Alexander, I question whether their testimony will "impugn severely" the integrity and credibility of the attorney in the eyes of the jury.[3] As a result, this case is substantially different from cases in which the attorney is a target of an investigation, *United States v. Salinas*, 618 F.2d 1092 (5th Cir.), *cert. denied*, 449 U.S. 961, 101 S.Ct. 374, 66 L.Ed.2d 228 (1980), is representing multiple clients with conflicting interests, or in which the attorney will be called to testify against his client[4]—all situations in which the risk of public suspicion is both clear and compelling. Moreover, where as here the risk of suspicion is not great, less intrusive methods, such as disciplinary proceedings, should be adequate to protect the public confidence in the bar.[5]

Against what the facts indicate is a fairly remote risk of public suspicion we must weigh the defendant's sixth amendment right to counsel of his choice. While I concede this right is not absolute, *e.g., United States v. Kitchin*, 592 F.2d 900 (5th Cir. 1979), it nevertheless is so compelling that the Fifth Circuit previously has held that a criminal defendant must be given the opportunity to waive a conflict of interest and retain counsel of his choice in situations where disqualification might otherwise be

*United States v. Kreczmer*, 636 F.2d 108, 110 (5th Cir. 1981).

2. Because the incident reported in the Alexander and Robinson affidavits related to the indictment in this case, the trial court found that the information in the affidavits would likely reach the jury through the testimony of either or both men.

3. I would also note that the evidence against the attorney was given *ex parte* and that no hearing, formal or otherwise, was held to test the accuracy of the evidence.

4. The majority opinion fails to explain that the government originally asserted four grounds of disqualification against the attorney, including

a conflict with his prior representation of government witnesses and the intention to call him as a witness at trial. The trial court specifically rejected *all* of the proffered grounds for disqualification except the "appearance of impropriety" ground. The attorney, therefore, concededly is not a target of a government investigation, nor is it likely he will be called to testify against his client.

5. In Florida, bar disciplinary proceedings are conducted by the state bar under the authority of the Florida Supreme Court. Fla.Const.Art. 5 § 15, Integration Rule for the Florida Bar Arts. X, XI.

appropriate. *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975) (potential conflict in attorney's representing codefendant).[6] In my opinion, the "social interests" of enforcing the constitutional rights of the defendant far outweigh any risk of public suspicion of the integrity of the judicial process that is presented by the facts of this case. Moreover, if the meager evidence presented here supports the "drastic action" of disqualification and consequent limitation of the constitutional right to counsel of one's choice, I find it difficult to envision under what circumstances the social interests of an attorney's continued representation will outweigh the risk of suspicion presented by an asserted conflict.

Disqualification of counsel in a criminal case on the "appearance of impropriety" should be a remedy sparingly used, resorted to only when the facts of the case indicate a grave danger of the erosion of public confidence in the judicial system, thus transcending any interest the defendant has in retaining counsel of his choice.[7] Because this situation is not present here, I must dissent from the affirmance of disqualification.

---

**6.** Because the sole ground for disqualification is the "appearance of impropriety," this case differs from those in which a disqualification resulted from an asserted conflict of interest which was certain to occur but, because its scope was unclear or its precise nature not understandable by the defendant, could not "knowingly and intelligently" be waived. *E.g., United States v. Dolan*, 570 F.2d 1177, 1181 (3d Cir. 1978). Here there is no allegation or evidence that the conflict alleged could not be waived by Hobson.

**7.** *Cf., Maxwell v. Superior Court*, 30 Cal.3d 606, 180 Cal.Rptr. 177, 639 P.2d 248 (1982) (holding that a potential conflict between attorney and client created by the client's assigning to the attorney exclusive "publicity rights" in the subject matter of the representation could be waived and was not sufficient grounds for disqualification).