UNITED STATES of America

v.

**Edward Wayne MARTIN, Defendant.**

**Cr. No. 93–31–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

June 17, 1993.

---

Miriam W. Duke, Macon, GA, for U.S.

O. Hale Almand, Jr., Macon, GA, for defendant.

## ORDER

OWENS, Chief Judge.

Before the court is the government's motion to disqualify defendant Martin's counsel, O. Hale Almand, from participating in the conduct of this case. The court held a hearing on this matter on June 16, 1993. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

Defendant Martin and two other defendants have been charged in a five-count indictment with violations of 18 U.S.C. § 1951, conspiring to violate the Hobbs Act, 18 U.S.C. § 371, i/c/w 18 U.S.C. § 876, conspiracy to mail a threatening communication, 18 U.S.C. § 876, mailing a threatening communication, and 18 U.S.C. § 1623, false declarations before a grand jury. The charges generally allege that defendants did conspire to mail and did mail to City Councilman William Douglas of Warner Robins, Georgia, a videotape of the councilman together with a woman not his wife. The videotape received by Councilman Douglas contained a handwritten note threatening to make the matter public if Douglas did not resign from City Council.

Defendant Martin is the current Mayor of Warner Robins and has served in that capacity since his election in 1988. The alleged victim, William Douglas, was a member of the City Council of Warner Robins when Martin was elected and has served as a councilman for many years.

The governing body of the City of Warner Robins is the "Mayor and Council," which consists of the Mayor and six council members. All seven members of this body have the right to vote on all matters brought before it. In addition, the Mayor acts as the City's Chief Executive Officer.

Shortly after defendant Martin became Mayor, a dispute arose between the Mayor and members of the City Council over the division of powers between the Mayor, as Chief Executive Officer, and the Mayor and Council. Councilman Douglas was involved in this dispute. The Council members sought advice from the City Attorney, who felt that he had a conflict of interest and advised them to seek outside counsel. O. Hale Almand was retained to assist in interpreting the City Charter.

Between July, 1990, and September, 1990, Mr. Almand met with the six Council members, both as a group and on an individual

basis, and discussed ways to curtail the Mayor's executive power. Mr. Almand advised the Council members that the Mayor had the right to have access to all meetings; however, the Mayor was never notified of the meetings and did not attend them. The six Council members and the Mayor then held a closed executive session the purpose of which was to confront the Mayor. This session was attended by Mr. Almand.

In December, 1990, the City Council adopted several amendments to the City Charter that had the effect of circumscribing the Mayor's authority to act without the Council's approval. The videotaping incident involving Councilman Douglas allegedly occurred four months after the adoption of these amendments.

The government contends that the dispute between defendant Martin and members of City Council, including the alleged victim, Councilman Douglas, forms a substantial part of defendant Martin's motive for participating in the alleged videotaping incident. Furthermore, the government anticipates that Councilman Douglas and other Council members will testify as to the dispute at defendant Martin's trial. Each Council member has executed a waiver of any existing attorney-client privilege.

As Mr. Almand formerly represented members of City Council in this dispute, he will be cross-examining former clients at trial. Thus, the government contends that he should be disqualified from representing defendant Martin in this matter.

### DISCUSSION

The government raises two grounds upon which to base its motion to disqualify Mr. Almand: (1) that his representation of defendant Martin creates an irreconcilable conflict of interest and (2) that his representation of defendant Martin creates an appearance of impropriety.

1. Conflict of Interest

■ This court finds that a conflict of interest is created by Mr. Almand's representation of defendant Martin in this case. Mr. Almand formerly represented members of

City Council in a dispute against the Mayor. This dispute allegedly motivated defendant Martin to blackmail Councilman Douglas. Mr. Almand now represents defendant Martin in a criminal case arising from the blackmail incident. Thus, Mr. Almand's former representation of the members of City Council is substantially related to his representation of defendant Martin in this case.

■ Under the Sixth Amendment, a criminal defendant has the right to conflict-free counsel. However, it is well established that a defendant can waive this right. *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975).

> [T]he right to conflict-free counsel, the public's interest in a fair trial, and the government's interest in precluding reversal of a conviction all are adequately protected if defendants are informed both that their representation might be adversely affected in certain ways and that they have the right to counsel unimpaired by any conflict.

*In re Paradyne Corp.*, 803 F.2d 604, 611 (11th Cir.1986).

Thus, before the court can determine whether Mr. Almand should be disqualified based upon the conflict of interest created by his former representation of City Council members, defendant Martin must be given opportunity to competently and intentionally waive his Sixth Amendment protections. Therefore, the court will **RESERVE** a ruling on the government's motion based upon this ground until a hearing as required under *United States v. Garcia*, 517 F.2d 272 (5th Cir.1975), can be held.

2. Appearance of Impropriety

■ The government also contends that Mr. Almand should be disqualified because his representation of defendant Martin creates an "appearance of impropriety." Defendant contends that "appearance of impropriety" is no longer grounds for attorney disqualification. *See Waters v. Kemp*, 845 F.2d 260, 265 (11th Cir.1988).

However, in *Waters*, the professional conduct of attorneys was governed by the American Bar Association Model Rules of Profes-

sional Conduct, under which "appearance of impropriety" is no longer a ground for attorney disqualification. In contrast, the conduct of attorneys in this district is governed by the Georgia Code of Professional Responsibility. *See* Rule 13.1(A) of the Local Rules of the Middle District of Georgia.

Canon 9 of this Code states that "[a] lawyer should avoid even the appearance of professional impropriety." Thus, this ground can be used to disqualify an attorney in this district.

The Eleventh Circuit adopted a two-prong test for disqualification of an attorney for creating an appearance of impropriety in *United States v. Hobson,* 672 F.2d 825 (11th Cir.1982).

> First, although there need not be proof of actual wrongdoing, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." .... Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case." .... "Under Canon 9, an attorney should be disqualified only when both of these standards have been satisfied."

*Id.* (quoting *Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir.1976)).

In *Hobson,* the "specifically identifiable impropriety" consisted of allegations that the defendant's attorney participated in the drug trafficking conspiracy for which the defendant had been charged. The court found that testimony about this impropriety would raise public suspicion and would "impugn severely [the attorney's] integrity and credibility in the eyes of the jury." *Id.* at 828. In addition, it "could result in erosion of public confidence in the integrity of the bar and of the legal system." *Id.* at 829. Therefore, the district court properly disqualified defendant's attorney in the case. *See also United States v. Urbana,* 770 F.Supp. 1552 (S.D.Fla. 1991) (defense attorney disqualified where he allegedly participated in RICO conspiracy involving defendant).

In this case, the court can find no "specifically identifiable impropriety." There is no allegation that Mr. Almand was involved in the blackmail incident or in any other wrongdoing of any kind.

Instead, the government apparently contends that the impropriety consists of the conflict of interest created in this case. However, an attorney with a conflict of interest is permitted to represent a criminal defendant so long as that defendant waives the conflict. *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975). Thus, Mr. Almand's representation of defendant Martin, in itself, is not improper conduct.

Moreover, as the Eleventh Circuit stated in *Waters v. Kemp,* 845 F.2d 260, 265 n. 12 (11th Cir.1988) (quoting *Board of Education v. Nyquist,* 590 F.2d 1241, 1247 (2d Cir. 1979)):

> [A]n "appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases. This is particularly true where ... the appearance of impropriety is not very clear."

The facts in this case simply do not amount to one of those rare cases where disqualification for appearance of impropriety is required. Therefore, the government's motion to disqualify on this ground is **DENIED.**

In summary, the government's motion to disqualify for appearance of impropriety is **DENIED.** However, the court **RESERVES** a ruling on the government's motion to disqualify Mr. Almand based upon his actual conflict of interest pending a hearing as required under *United States v. Garcia.*

**SO ORDERED.**