**Dawne C. NURI, Plaintiff,**

v.

**PRC, INC., Defendant.**

**No. Civ.A. 97–T–1036–N.**

United States District Court,
M.D. Alabama,
Northern Division.

May 8, 1998.

Lowell Landis Sexton, Beasley, Wilson, Allen, Crow & Methvin, PC, Thomas D. Simon, Montgomery, AL, for Plaintiff.

Thomas A. Radney, Radney, Radney & Brown, P.A., Alexander City, AL, David M. Smith, Carole A. Golinski, Michael E. Turner, Maynard, Cooper & Gale, P.C., Birmingham, AL, Defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

This case is now before the court on defendant PRC, Inc.'s motion to disqualify counsel, filed April 14, 1998, by which PRC is seeking to disqualify plaintiff Dawne C. Nuri's attorney, Thomas Simon. PRC alleges that Simon obtained privileged information about PRC's case indirectly from Jerry Huffstickler, PRC's director of business development for defense systems, in violation of Rule 4.2 of the Alabama Rules of Professional Conduct. The information allegedly came to Simon through Leon Tasheiko, an attorney

who shares an office with Simon, and Joel Thrasher, one of Tasheiko's employees. For the reasons that follow, PRC's motion is denied.

## I. BACKGROUND

Nuri brought this lawsuit alleging that PRC exposed her to hostile-work-environment sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17. Jury trial of the case commenced on April 13, 1998, with PRC filing its motion on the second day of trial. During the course of the trial proceedings, out of the presence of the jury, the court heard testimony from Huffstickler and Tasheiko on PRC's motion. The testimony revealed a tangled web of relationships among Nuri, Huffstickler, Tasheiko, and Thrasher; Simon was also connected to this group, but the testimony showed that his connection was limited. The basic facts of the relationship among these persons are as follows:

- In the early 1990s, Nuri, Huffstickler, and Thrasher worked together in PRC's Montgomery office. They became friendly at that time, and have remained friendly to the present day.

- While Nuri, Huffstickler, and Thrasher were working together, Tasheiko also came to know the three of them. Tasheiko met the group because he owns a company that has had an on-going contractual relationship with PRC, and he had many business contacts with PRC's Montgomery office.

- Some time after this, Thrasher's employment with PRC came to an end. He was later hired by Tasheiko to work as a computer database manager for Tasheiko's company, and he is still employed in this capacity at present.

- In addition to his business, Tasheiko was also admitted to the practice of law in Alabama in 1995. He is a solo practitioner, and shares office space with Simon, who is also a solo practitioner. Their offices are located in a house that has been converted into office space, and the offices are physically close to one anoth-

er. Apparently, although they do not share a telephone line, Tasheiko has his calls directed to Simon's office telephone line to ensure that calls will be answered when he is away from the office.

- When Nuri was seeking counsel to help her pursue this lawsuit, she asked Huffstickler if he knew any attorneys in Montgomery whom she could consult. Huffstickler only knew one attorney— Tasheiko—so he referred Nuri to Tasheiko.

- Tasheiko agreed to, and did, help Nuri file her charge of discrimination with the Equal Employment Opportunity Commission. After offering this assistance free of charge, Tasheiko referred Nuri's case to Simon. Tasheiko had obvious potential ethical conflicts and business problems that would prohibit his litigating against PRC, and, therefore, he directed Nuri to someone who could handle her case. There was no fee paid for this referral, nor any other fee arrangement involving Tasheiko.

- Simon commenced the representation of Nuri, later associating another attorney, Landis Sexton.

- After Huffstickler referred Nuri to Tasheiko, Huffstickler and Tasheiko had, and continue to have, frequent telephone conversations. Until mid–1997, Huffstickler had business-related reasons to talk with Tasheiko, but during all relevant periods, they were friends, and talked about many things not related to business, including the status of Nuri's case.

- Huffstickler testified that shortly after his referral of Nuri to Tasheiko, he had some detailed conversations with Tasheiko about Nuri's case. After that, even though the case often came up in his conversations with Tasheiko, he described the substance of their conversations as 'gossipy,' and indicated that he never felt like Tasheiko was trying to get information from him about the case. Their conversations have continued to the present day, and did include some discussion and joking about PRC's meth-

od of preparing its witnesses for deposition.

- Huffstickler also had frequent conversations with Thrasher in the many months leading up to the trial of this cause. Again, he characterized the substance of the conversations as 'gossipy' until relatively recently, when he had some more detailed conversations with Thrasher. There was no indication that Thrasher was trying to get information from Huffstickler about the case.

- On a few occasions, while conducting depositions in Simon's office, David Smith, counsel for PRC, observed Nuri, Simon, and Tasheiko visiting during breaks in the depositions. On at least one occasion, he saw the three of them go into Simon's office together and close the door. Any contact that occurred among Nuri, Simon, and Tasheiko happened during breaks in the depositions, and Tasheiko did not participate in the depositions.

- As the trial of this cause approached, Simon sought help from Tasheiko with proposed voir dire questions. Tasheiko provided Simon with generic voir dire questions he had used in another case in federal court, and was not involved any further in the process of preparing for this case.

- In a review of PRC's telephone records, Timothy Bowen, PRC's associate manager of security, discovered a number of calls made by Huffstickler to Simon's office telephone number. During these calls, Huffstickler never spoke to Simon, and was not trying to reach Simon. Instead, he was calling Tasheiko.

## II. DISCUSSION

### A.

■ It is "beyond dispute that lawyers are officers of the court and that the courts have the inherent authority to regulate their professional conduct." *In re Gopman,* 531 F.2d 262, 266 (5th Cir.1976).[1] Attorneys who practice in the Middle District of Alabama must "adhere to [the Middle District's] Local Rules, the Alabama Rules of Professional Conduct, the Alabama Standards for Imposing Lawyer Discipline, and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct." M.D.Ala.L.R. 83.1(f).[2] "These local rules represent controlling obligations on attorneys appearing in this court." *Green v. Montgomery County, Ala.,* 784 F.Supp. 841, 842 (M.D.Ala.1992) (Thompson, J.) (citing *Cox v. American Cast Iron Pipe Co.,* 847 F.2d 725, 728 n. 4 (11th Cir.1988); *Waters v. Kemp,* 845 F.2d 260, 263 (11th Cir.1988)).

The method to be employed by the court for considering a motion to disqualify an attorney based on an alleged violation of the rules governing his conduct is somewhat unclear in light of recent changes to the rules of professional conduct. In the past, most motions to disqualify were analyzed under a test derived from Canon 9 of the American Bar Association's Model Code of Professional Responsibility, and a similar, if not identical, provision of Alabama's Code of Professional Responsibility.[3] *See Norton v. Tallahassee Mem'l Hosp.,* 689 F.2d 938, 941 (11th Cir. 1982); *United States v. Hobson,* 672 F.2d 825, 828 (11th Cir.1982). This approach drew on the language of Canon 9, which provided that "A lawyer should avoid even

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2. The Local Rules of the Middle District of Alabama are available in Westlaw's on-line databases. They can be located by using West's "find" command to locate "al order 97–15," or by searching in the "al-rules" database.

3. Some motions to disqualify are analyzed differently, like those that are based on a provision such as the current Rule 1.9. Rule 1.9 prohibits an attorney who has formerly represented one party from representing an opposing party in litigation that has a substantial relationship to the former litigation in which he represented the first party. This rule specifically allows the first party to seek the disqualification of the attorney, and employs a different mode of analysis. *See, e.g., Green v. Montgomery County, Ala.,* 784 F.Supp. 841, 842–44 (M.D.Ala.1992) (Thompson, J.).

the appearance of impropriety." *Norton*, 689 F.2d at 941. To persuade the court that it should disqualify an attorney under this standard, the moving party had to show (1) a reasonable possibility that some specifically identifiable impropriety did in fact occur, although there need not be proof of actual wrongdoing, and (2) a likelihood of public suspicion or obloquy that outweighs the social interests which will be served by a lawyer's continued participation in a particular case. *Hobson*, 672 F.2d at 828. The continued viability of this method of analysis is questionable, however, because the American Bar Association's Model Code was replaced with its Model Rules of Professional Conduct in August 1983, and Alabama's Code was replaced by its Rules of Professional Conduct on January 1, 1991, and neither of these new sets of rules contains language like that of Canon 9.

Surprisingly, the court was not able to locate any local cases, since Alabama changed to its new set of rules in January 1991, setting forth a new method of analyzing a motion to disqualify.[4] And with the language of Canon 9 that focuses on "even the appearance of impropriety" gone from any set of rules governing an attorney practicing in the Middle District, and no language that is similar, the test based on it seems improper. Nonetheless, in surveying the cases addressing disqualification, the court has divined a general approach and a number of principles that continue to have force, and that can guide the court in considering disqualification.

■ Consideration of a motion to disqualify involves a balancing of competing interests, and disqualification is not something that follows mechanically from a finding of a

violation. *See, e.g., Chapman Eng'rs, Inc. v. Natural Gas Sales Co., Inc.*, 766 F.Supp. 949, 954 (D.Kan.1991) ("An ethical violation does not automatically trigger disqualification.... The remedy for unethical conduct lies with the appropriate disciplinary machinery unless there exists the threat of tainting the trial."); *Papanicolaou v. Chase Manhattan Bank*, 720 F.Supp. 1080, 1083 (S.D.N.Y.1989) ("It follows that a violation of professional ethics rules does not alone trigger disqualification ...; rather, a trial judge should primarily assess the possibility of prejudice at trial that might result from the attorney's unethical act."). Among the many competing interests are maintaining the integrity of the legal community and the legal process, protecting litigants from prejudice caused by violations of the rules, and respecting a person's ability to choose her own counsel. *See, e.g., id.; Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F.Supp. 514, 517 (M.D.N.C.1996) ("The guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings; the purpose of granting such motions is to eliminate the threat that the litigation will be tainted."); *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F.Supp. 724, 729 (E.D.Va.1990) ("There must be a balance between the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community.").

The best articulation of a standard encompassing these considerations was advanced by the Eighth Circuit in dealing with disqualification for the same type of violation alleged here—*ex parte* contact with a represented party. In *Meat Price Investigators Ass'n v. Spencer Foods, Inc.*, 572 F.2d 163 (8th Cir. 1978), the court stated that "three competing interests must be balanced: (1) the client's

---

4. Even though no new standard was found, the thought that a new standard may be necessary was alluded to in *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725 (11th Cir.1988). In this case, while setting forth the standard to apply to a motion to disqualify, the court noted that the American Bar Association had deleted the language of Canon 9 of its Model Code of Professional Responsibility from its new Model Rules of Professional Conduct. The court still applied the standard based on Canon 9, however, because the language remained in the Alabama Code of Professional Responsibility. *See id.* at 729 n. 5;

see also *Waters v. Kemp*, 845 F.2d 260, 265 & n. 13 (11th Cir.1988) (refusing to consider disqualification under Canon 9 because no rule with similar language governed conduct in Southern District of Georgia); *United States v. Martin*, 824 F.Supp. 208, 210–211 (M.D.Ga.1993) (using Canon 9 standard because language was still part of Georgia Code of Professional Responsibility, and Georgia Code governed conduct in Middle District of Georgia). As mentioned above, in January 1991, the Alabama Code was replaced with a new set of rules resembling the American Bar Association's Model Rules.

interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration of justice." *Id.* at 165. Other courts also use a similar test that considers a motion to disqualify by first looking at the rules governing attorney conduct, and then considers those " 'in light of the public interest and the litigants' rights.' " *Cole v. Ruidoso Municipal Schools,* 43 F.3d 1373, 1383 (10th Cir.1994) (quoting *In re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir.1992)); *see also F.D.I.C. v. United States Fire Ins. Co.,* 50 F.3d 1304, 1311–12 (5th Cir.1995).

 Underlying this type of a balancing test are some other general principles. First, violations come in varying degrees of severity, but disqualification is always a drastic measure, which courts should hesitate to impose except when absolutely necessary. *See, e.g., Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir.1993); *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp.,* 961 F.Supp. 1580, 1582 (M.D.Fla.1997) ("The disqualification of one's chosen counsel is an extraordinary measure that should be resorted to sparingly."). Because of the impact a motion to disqualify has on the party losing her counsel, the moving party is held to a high standard of establishing the basis of the motion, and the need for disqualification. *See, e.g., Plant Genetic Sys.,* 933 F.Supp. at 517 ("Disqualification is a serious matter which cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified."); *English Feedlot, Inc. v. Norden Laboratories, Inc.,* 833 F.Supp. 1498, 1506 (D.Colo.1993) ("The moving party has the burden of showing sufficient grounds for disqualification.... Specific facts must be alleged and 'counsel cannot be disqualified on the basis of speculation or conjecture....' "); *Tessier,* 731 F.Supp. at 729 (E.D.Va.1990) ("The Court is also aware that the disqualification of a party's chosen counsel is a serious matter which cannot be based on imagined scenarios of conflict."). Other means of addressing a violation short of disqualification are available to the court— like exclusion of ill-gotten evidence—and should be used when appropriate. *See, e.g., University Patents, Inc. v. Kligman,* 737 F.Supp. 325, 329 (E.D.Pa.1990) ("the court is satisfied that the circumstances warrant precluding the defendants from introducing any information obtained through Mr. Morrison's *ex parte* contacts with persons whose statements could bind the University.").

 Finally, because a motion for disqualification is such a "potent weapon" and "can be misused as a technique of harassment," the court must exercise extreme caution in considering it to be sure it is not being used to harass the attorney sought to be disqualified, or the party he represents. *See, e.g., Kitchen v. Aristech Chem.,* 769 F.Supp. 254, 256–57 (S.D.Ohio 1991); *see also Developments in the Law: Conflict of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1285 (1981) ("Lawyers have discovered that disqualifying counsel is a successful trial strategy, capable of creating delay, harassment, additional expense, and perhaps even resulting in the withdrawal of a dangerously competent counsel.").

The court will now turn to consideration of the motion before it in light of the approach and principles discussed above.

**B.**

] PRC asserts that Simon violated Rule 4.2 of the Alabama Rules of Professional Conduct by obtaining knowledge about its case from *ex parte* conversations between Huffstickler and Tashieko, and Huffstickler and Thrasher. Rule 4.2 provides: "a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." As one district court has identified, Rule 4.2 serves several important purposes. "It guarantees fairness in the adversarial system. It prevents unprincipled attorneys from exploiting the disparity in legal skills between attorney and laypeople. It preserves the integrity of the attorney-client relationship. The Rule also protects 'opposing lawyers as well as opposing parties. Lawyer B may have two reasons for

not wanting his client to speak to Lawyer A alone. The obvious reason is fear that the client will damage his case by making unwise voluntary statements.... Another reason is fear that the lawyer's own tactics will be compromised, and that his own reputation will suffer as a result.'" *Papanicolaou v. Chase Manhattan Bank,* 720 F.Supp. 1080, 1083 (S.D.N.Y.1989) (quoting Geoffrey C. Hazard & W. William Hodes, *The Law of Lawyering* 434–35 (1988)).

The comments to Rule 4.2 indicate that the rule prohibits an attorney from communicating with the employee of an adverse party if (1) the employee exercises managerial responsibility on behalf of the organizational employer, (2) the employee's act or omission may impute civil or criminal liability to the employer, or (3) the employee's statement would constitute an admission by the employer. Because Huffstickler is a managerial employee at PRC, Rule 4.2 would seem to prohibit Simon or his agents from having a conversation with him, in his capacity as a managerial employee, without the consent of PRC's counsel.

■ In this case, the court has found no indication that there was a violation of this rule. First, it is undisputed that Simon himself had no contact with Huffstickler. Furthermore, even though Tasheiko and Thrasher had repeated contacts with Huffstickler, it is also undisputed that neither Tasheiko nor Thrasher had any formal connection to Simon or involvement in this case. PRC's argument, rather, is founded on a number of facts that it argues have, at least, the appearance of impropriety, and probably point to some concealed impropriety involving privileged information that Tasheiko or Thrasher may have had. These facts include: Simon's sharing an office with Tasheiko; Tasheiko's having his telephone calls directed to Simon's telephone line; Tasheiko's visiting with Simon and Nuri during depositions in the case; Simon, Tasheiko, and Nuri going in to Simon's office together and closing the door in Smith's presence; and Tasheiko's providing Simon with generic voir dire questions. The court agrees with PRC insofar as this collection of facts must raise a question in an observer's mind about improper behavior, but any question is not borne out by the evidence. There is simply no evidence that Simon acted inappropriately, nor that he had or sought contact with Huffstickler, nor benefitted from any contact Tasheiko or Thrasher had with Huffstickler. Therefore, despite a questionable appearance, there was no violation of the rules governing attorney conduct here. Furthermore, as one would expect in light of this finding, there has been no evidence of any prejudice suffered by PRC at all, much less prejudice caused by Simon. Consequently, there is no basis for interfering with Simon's representation of Nuri, nor the proceedings that have taken place to this point.

As noted earlier, and as affirmatively stated by the *Norton* court while considering disqualifying an attorney under Canon 9, "Disqualification is a harsh sanction, often working substantial hardship on the client, especially in cases ... where extensive discovery and trial preparation have been completed." 689 F.2d at 941 n. 4. Disqualification would be particularly harsh where, as here, PRC can only offer suppositions about any impropriety it believes may have happened, and it has no actual evidence. In light of the foregoing, it appears clear to the court that PRC's motion to disqualify is without basis, and should be denied.

### III. CONCLUSION

■ Although there is no evidence of a violation of the rules governing attorney conduct here, the question of Simon's prudence in not setting up a more clearly-established separation of himself from the relationships among the individuals involved in this litigation is left open. Simon, and all other attorneys, must pay careful attention to any potential conflicts or violations and avoid situations that even suggest impropriety. Although, in the absence of the language of Canon 9, the appearance of impropriety alone is not a sufficient basis for disqualification, it is enough to lead the court to inquire into the attorney's conduct, and may ultimately jeopardize the interests of his clients.

For the foregoing reasons, it is ORDERED that defendant PRC Inc.'s motion

to disqualify counsel, filed April 14, 1998, is denied.