In re ADVANCED TELECOMMUNCA-
TION NETWORK, INC., Debtor.

**Advanced Telecommunication Network, Inc., a New Jersey Corporation, Plaintiff,**

v.

**Daniel W. Allen and David D. Allen, Defendants.**

Bankruptcy No. 6:03–BK–0299–KSJ.
Adversary No. 6:03–AP–122–KSJ.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

May 26, 2005.

Jimmy D. Parrish, Gronek & Latham LLP, Orlando, FL, R. Scott Shuker, Gronek & Latham LLP, Orlando, FL, James E. Foster, Akerman Senterfitt, Orlando, FL, for debtor.

*AMENDED MEMORANDUM OPINION DENYING DEFENDANTS' EMERGENCY MOTION TO DISQUALIFY OPPOSING COUNSEL AND TO CONTINUE TRIAL*

KAREN S. JENNEMANN, Bankruptcy Judge.

In their Motion to Disqualify Opposing Counsel, Continue Trial and for Related

Relief (Doc. No. 211) (the "Motion to Disqualify"), the defendants, Daniel W. and David D. Allen (the "Allens"), seek to disqualify the attorneys, R. Scott Shuker and Jimmy D. Parrish, and the law firm of Gronek & Latham LLP, from any further representation of the plaintiff, Advanced Telecommunication Network, Inc. ("ATN"). For the reasons stated orally and in this Memorandum Opinion, the Motion to Disqualify is denied.

The issue is whether a single colloquy on the record between the Honorable Arthur B. Briskman, the judge previously presiding over this adversary proceeding, and ATN's counsel warrants disqualifying ATN's counsel from any further participation in this case. The Allens filed the Motion to Disqualify after they learned that a hearing took place outside of their presence on an emergency motion filed by ATN's counsel (the "Emergency Motion") (Doc. Nos. 185, 204, 205).

In the Emergency Motion, ATN sought the unusual relief of the appointment of a temporary receiver *pendente lite* over certain corporations allegedly owned or controlled by the Allens. ATN argued that the Allens would further secret assets that they already had refused to turn over in response to two prior contempt orders. The first contempt order was issued against David Allen for failing to provide an accounting of assets the Allens had obtained from ATN (Doc. No. 137). The second contempt order was issued against both Daniel and David Allen for the failure to repatriate assets obtained from ATN (Doc. No. 139). Last fall, ATN was concerned that the Allens would transfer assets into various corporate entities to hinder ATN from reaching the assets that are the subject of this fraudulent adversary proceeding.[1]

Due to the nature of the relief sought, ATN probably intended to file the Emergency Motion under seal. However, because pleadings now are filed electronically and the new system was only recently implemented, the procedures required to file papers under seal were unclear. Now, parties first must file a motion to request the Court to accept a pleading under seal. Then, if the Court grants the request, parties must file a paper copy of the sealed pleading. Here, ATN's counsel simply filed and docketed the Emergency Motion electronically on September 14, 2004, and waited to ask the Court to seal the record. Unfortunately, once a pleading is filed electronically the time to ask for any confidential sealing has passed. All parties of record using the CM–ECF System immediately receive a copy of the electronic pleading.

In this case, the Allens' attorney was not yet using the CM–ECF System. Therefore, the attorney did not receive an immediate electronic copy. However, the Allens' attorney was regularly monitoring the pleadings filed in this case and, by pure happenstance, noted the filing of the Emergency Motion and printed a copy. ATN did not serve the Allens or their attorney with any notice of the hearing that went forward without the Allens' knowledge the next day, on September 15, 2004.

The hearing occurred on the record, albeit *ex parte*. The transcript from the hearing reveals that counsel for ATN presented the Emergency Motion, outlined its summary version of events leading up to the Emergency Motion, and explained why the Emergency Motion was not served

1. A trial on the merits of ATN's fraudulent transfer of claims was held in October 2004. On February 18, 2005, a Final Judgment was entered in favor of the Allens, which held that the original transfers were not avoidable (Doc. No. 257).

upon opposing counsel or the Allens (Doc. No. 214). ATN's counsel maintained that, during the pendency of ATN's fraudulent transfer lawsuit against the Allens, the Allens repeatedly would seek continuances or take other actions in order to shift or conceal any assets potentially subject to recovery. No question exists that the Allens did not comply with the two prior contempt orders. (The Allens contend they were not required to comply, arguing the orders were void.) Thus, ATN's counsel argued that they did not serve the Allens with the Emergency Motion or notice of hearing because they believed advance notice of the unusual relief requested—imposing receiverships over certain non-debtor corporations—would allow the Allens to take further evasive action in order to prevent ATN from possibly recovering those assets.

Although *ex parte* hearings generally are disfavored, the facts, as asserted by ATN, would justify such a hearing. Here, the defendants had failed to comply with two contempt orders of the Court. Therefore, ATN reasonably believed that the defendants would take further actions to hide assets if they had notice of the possible appointment of a receiver over the corporations.

Judge Briskman did not grant the Emergency Motion or order any other formal relief at the *ex parte* hearing. However, ATN's counsel and Judge Briskman contemplated and candidly discussed possible courses of action that might prevent any removal or dissipation of assets, including filing a pleading similar in substance to the Emergency Motion on the day of the upcoming trial. The frustration of both the judge and the attorneys came through clearly in the written transcript.

At the end of the hearing, Judge Briskman inquired as to whether the Emergency Motion appeared on the docket. Upon learning that the Emergency Motion was docketed and accessible for viewing, he suggested that it be removed from the docket. The Emergency Motion later was removed and in its place on the docket a notation was made that the pleading had been removed "per judicial request" (Doc. No. 185). By that time, the Allens already had received a copy of the Emergency Motion.

Soon after the *ex parte* hearing,[2] the entire case as well as this adversary proceeding was reassigned to this Court, who directed the release of the hearing transcript of September 15, 2004 (Doc. Nos. 200 and 214), and orally denied the Allens' Motion to Disqualify on October 6, 2004 (Doc. No. 216). The trial on the adversary proceeding went forward, and on February 18, 2005, this Court entered a Final Judgment in favor of the Allens.

■ In their Motion to Disqualify, the Allens maintain that, although reassigning the case and adversary proceeding to a new judge is a step in the right direction, the only way to fully restore integrity in the proceeding and ensure future fairness is to disqualify ATN's counsel and their law firm. In support of their request to disqualify ATN's counsel, the Allens cite *U.S. v. Hobson,* 672 F.2d 825, 828 (11th Cir.1982) *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). In *Hobson,* the Eleventh Circuit Court of Appeals affirmed the decision of the District Court for the Northern District of Florida disqualifying a defendant's attorney from representing a defendant in connection with the defendant's upcoming criminal trial on

**2.** A Notice of Reassignment was filed on September 20, 2004 (Doc. No. 251 in the Main Case).

alleged violations of federal drug trafficking laws where the disqualification was based on the significant possibility that evidence would be introduced before a jury that could show the defendant's attorney had actual knowledge of the defendant's criminal activity in the case. *Hobson,* 672 F.2d at 826. In upholding the decision of the trial court, the Eleventh Circuit adopted and applied a two factor test for attorney disqualification. First, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Hobson,* 672 F.2d at 828 (*citing Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir. 1976)). Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." *Id.* (*citing* 537 F.2d at 813 n. 12.) An attorney should be disqualified only when both factors are present. *Id.*

Applying the two factor test, the Eleventh Circuit Court of Appeals found that the first factor was easily satisfied where two affidavits likely to be admitted into evidence described a specifically identifiable impropriety on the part of the defendant's attorney which established a reasonable possibility that the impropriety occurred. *Hobson,* 672 F.2d at 828. In considering the second factor, the Appellate Court balanced the "likelihood of public suspicion against the social interests served by the attorney's continued representation," weighing the defendant's right to retain the counsel of his choice against the risk that "public confidence in the integrity of [the] legal system" would be undermined. *Id.* In concluding that the second factor also was met, the Court reasoned as follows:

> [T]he likelihood of public suspicion outweighs [the defendant's] interest in being represented by the attorney in ques-

tion. The two affiants... will be called at trial as government witnesses. While one cannot predict with certainty what evidence will be offered, it is reasonable to expect that they will testify as to the same allegations made in their affidavits. This testimony will portray [the defendant's] attorney as having engaged in thoroughly improper and unethical conduct and thus will impugn severely his integrity and credibility in the eyes of the jury. Moreover, at that point, the ordinary person would perceive the specifically identifiable impropriety in the attorney's continued representation of a co-defendant in a case where trial testimony makes the attorney a fact witness whether he chose to testify or not. Although the allegations in the affidavits may be untrue in fact, once the testimony is heard by the jury the damage will have been done-such testimony very likely could result in erosion of public confidence in the integrity of the bar and of the legal system...

*Id.* at 828–29.

The Allens cite two other cases in support of disqualification, *Kleiner v. First Nat. Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985) and *Wisconsin Steel Company v. International Harvester Co.* (*In re Wisconsin Steel Company*), 48 B.R. 753 (D.C.Ill.1985). The *Kleiner* case involved a class action lawsuit filed against a bank for allegedly overcharging interest. The certified class contained approximately 8,600 potential members who were notified that they would be included in the plaintiff class unless they filed an exclusion request by a specified deadline. Before that deadline had expired, attorneys for the defendant bank served twenty-five prospective class members with notices of deposition, in an alleged attempt to intimidate the plaintiffs from participating in the class. *Kleiner,* 751 F.2d at 1196.

The bank also, with assistance of counsel, began to directly contact potential class members to seek exclusion requests in an attempt "to reduce its potential liability and quelling the adverse publicity the lawsuit had spawned." *Id.* at 1197. The bank's lead attorney, Richard Kirby, advised the bank that such an action, while not *per se* illegal, would likely "provoke the wrath of the court" and result in a variety of sanctions. *Id.* Nevertheless, with Kirby at the helm, the bank embarked upon a massive campaign to solicit additional exclusion requests from the certified plaintiff class, reaching over 3000 potential class members by telephone, nearly 2800 of which opted for exclusion. "Secrecy and haste shrouded the undertaking, which [ ] coincide[d] with the district judge's vacation." *Id.*

When the District Court learned of the bank's actions, it disqualified Kirby from representing the bank but did permit other attorneys from Kirby's law firm to defend the bank. In affirming this decision, the Eleventh Circuit Court of Appeals found that the first factor of the *Hobson* test was satisfied where there was "uncontroverted proof" of Kirby's wrongdoing. *Id.* at 1210. In analyzing the second prong, the Appellate Court considered whether the public trust in the judiciary would be eroded if Kirby were allowed to continue to represent the bank, as was the bank's desire. Noting that "the Bank was not an innocent victim of disqualification" and that the "covert communications scheme was of [the bank's] own devise and execution," the Court reasoned that Kirby's disqualification was warranted in order to maintain adherence to court orders and "to secure the orderly administration of the laws," holding that "the concern for public trust in the impartial enforcement of the laws overrode the Bank's entitlement to counsel of choice." *Id.*

Lastly, in *Wisconsin Steel,* the defendant filed a motion to disqualify the presiding bankruptcy judge and counsel for the debtors in possession from further participation in an adversary proceeding on the grounds that two judicial opinions in the case purportedly authored by the bankruptcy judge were actually written by counsel for the debtors in possession without the defendant's knowledge. *Wisconsin Steel,* 48 B.R. at 754. Both opinions ruled in favor of the alleged author. *Id.* at 755.

The bankruptcy judge denied the motion to disqualify but was reversed by the District Court for the Northern District of Illinois, Eastern Division. The Court, in concluding the *Hobson* test was satisfied, found that the opinions prepared by plaintiff's counsel and signed, verbatim, by the judge without the knowledge of defendant's counsel constituted an *ex parte* communication giving rise to a strong appearance of impropriety which was made even stronger by the failure of the plaintiff and the judge to make known the authorship when defendant's counsel questioned why plaintiff's attorney received a copy of the second opinion before they did. *Id.* at 761. The following words of the district court judge bear consideration and repeating in connection with the second element of the *Hobson* test:

> Every experienced lawyer and judge knows how important it is that litigants believe in the fairness of the process. No one likes to lose, but if an unfavorable decision is perceived to be the result of an impartial consideration, it is usually bearable. What cannot be tolerated is an unfavorable decision that is seen as not simply wrong, but unfair.

*Id.* at 762. In *Wisconsin Steel,* the manner in which the *ex parte* communications occurred constituted specifically identifiable improprieties. Disqualification of the

plaintiff's counsel was deemed warranted to preserve the integrity of the judicial process and to resuscitate the integrity of the proceeding. *Wisconsin Steel*, 48 B.R. at 765. The two opinions in question were expunged, and plaintiff's counsel was required to pay the fees and costs generated in remedying the situation.

■ The facts presented in this case are vastly distinguishable from those presented in the *Hobson, Kleiner*, and *Wisconsin Steel* decisions. Here, the Allens had failed to comply with two prior contempt orders. ATN believed that, given notice, the Allens could take further evasive action. ATN filed their Emergency Motion properly seeking an *ex parte* hearing to address their concerns. *Ex parte* hearings, while discouraged, are sometimes appropriate. In this case, the decision to allow ATN to proceed with a hearing without notice to the Allens does not appear improper. Moreover, the hearing was held on the record. The Allens, although absent from the hearing, received the Emergency Motion as well as a complete transcript of the hearing.

Therefore, the only possible basis for disqualification of ATN's counsel is that the tenor or content of the discussion occurring during this hearing was somehow improper. During the challenged colloquy, the overall theme presented was one of frustration. Both the judge previously presiding over this adversary proceeding and counsel for ATN expressed clear frustration with the Allens' actions. Although some may find the portion of the discussion relating to anticipated future events beyond the scope of the issues raised by ATN's Emergency Motion, the conversation does not rise to the level of a specifically identifiable impropriety.

Furthermore, even if any alleged impropriety occurred, no harm has resulted. No action was taken at the hearing, other than

the pleading was withdrawn from public access, but only after the Allens received a copy. ATN shortly thereafter refiled a motion similar to the Emergency Motion as well as the original Emergency Motion (Doc. Nos. 204 and 205). No harm was done that would justify removal of an attorney specifically selected by ATN because there simply is not cause for public suspicion or obloquy.

This is not a case, as in *Hobson*, where a criminal lawyer has actual knowledge of a crime. Nor is this the case, as in *Kleiner*, where a lawyer representing a bank in a class action attempts to manipulate the decision of class members to join or opt out of class membership. Lastly, this is not a case, as in *Wisconsin Steel*, where a lawyer ghost writes an opinion for a court. In each of those decisions, the facts were egregious, and the disqualification was necessary to maintain the integrity of the proceeding and the judicial system as a whole. Such is not the case here.

Rather, this is a case where parties were vigorously litigating an alleged fraudulent transfer. The Allens, as the holders of the challenged transfer, had refused to comply with earlier court orders, and ATN was concerned they would do so again, if given notice of the Emergency Motion. An *ex parte* hearing was conducted at which no action was taken. Everything discussed or relating to that hearing was soon thereafter made public. Thus, the Court surmises that the Motion to Disqualify may have been filed more for strategic purposes in an attempt to remove experienced counsel on the eve of trial and not to correct any over arching impropriety or to address any social policy concern.

Regardless, the Allens have failed to meet the two factor test established by the Eleventh Circuit Court of Appeals in *Hobson*. Disqualification of ATN's attorneys and their law firm is unwarranted. The

Motion to Disqualify is denied. A separate order consistent with this Memorandum Opinion shall be entered.